1   SHIRLEY D. DEUTSCH, Bar No. 76230
    SCHWARTZ & DEUTSCH, LLP
2   300 S. Grand Ave., Suite 3900
    Los Angeles, California 90071
3   Tel: (213) 236-9400
    Fax: (213) 236-9499
4   Email: sdeutsch@earthlink.net

5   Attorney for Defendants
    MACY'S WEST STORES, INC.,
6   MACY'S CORPORATE SERVICES, INC.,
    AND MACY'S RETAIL HOLDINGS, INC.
7

8                    UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10  HOURVASH DEZHAM,                    Case No.:  **SACV13-01864 DOC (RNBx)**

11                                      **NOTICE OF REMOVAL OF CIVIL**
                  Plaintiff,            **ACTION TO THE UNITED STATES**
12  MACY'S WEST STORES, INC., an        **DISTRICT COURT FOR THE**
    Ohio corporation doing business in the **CENTRAL DISTRICT OF**
13  State of California; MACY'S         **CALIFORNIA**
    CORPORATE SERVICES, INC., a
14  Delaware corporation doing business in  Complaint Filed:   October 17, 2013
    the State of California; MACY'S     Trial Date:        None Set
15  RETAIL HOLDINGS, INC., a New
    York corporation doing business in the
16  State of California; and DOES 1 - 10,
    inclusive,        Defendants.
17

18  TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL

19  DISTRICT OF CALIFORNIA AND PLAINTIFF'S COUNSEL OF RECORD:

21      PLEASE TAKE NOTICE that Defendants MACY'S WEST STORES, INC.,

22  MACY'S CORPORATE SERVICES, INC. and MACY'S RETAIL HOLDINGS,

23  INC. ("Defendants"), hereby remove the above-entitled action pursuant to 28 U.S.C.

24

25  §§ 1332, 1441, and 1446, on the following grounds:

26      1.    State Court Action

27

28  Plaintiff Hourvash Dezham ("Plaintiff") filed this action against Defendant in

Orange County Superior Court, Case No. 30-2013-00681865-CU-WT-CJC ("State Court Action"). Copies of the Civil Case Cover Sheet, Summons and Complaint that were served on Defendant on October 28, 2013 are attached as Exhibit "A." No other process, pleadings or orders have been served or filed in this action.

2.    Diversity of Citizenship

Plaintiff is a citizen of California who resides in Orange County, California and worked at Macy's South Coast Plaza store in Costa Mesa, California from 1998-2012. Complaint at ¶¶3, 10-11; Ex. "B," Declaration of Julie Avins at ¶¶4-9. Plaintiff has resided in the State of California since 1997; she has been employed in the State of California from 1997 until 2012; she sought employment in the State of California in 2013; she has a California driver's license; she has a home telephone number and a cell phone number, both of which use a "949" area code for South Orange County, California; and she has paid taxes and had taxes and disability insurance taxes withheld on her behalf in the State of California. Id.  As such, Plaintiff was domiciled in the State of California as of the date of the filing of the instant lawsuit, and she is thus a citizen of California.   See, e.g., Lew v. Moss, 797 F.2d 747, 750 (9th Cir. Cal. 1986).

Pursuant to 28 U.S.C. § 1332(c)(1), Defendants are deemed to be citizens of the states in which they are incorporated and the states where their principal places of business is located. Defendant Macy's West Stores, Inc. is incorporated under the laws of the State of Ohio. Ex. "C," Declaration of Linda Balicki at ¶5. Macy's

2.

Corporate Services, Inc. is incorporated under the laws of the State of Delaware. Id. at ¶6. Macy's Retail Holdings, Inc. is incorporated under the laws of the State of New York. Id. at ¶4. On October 17, 2013, the date on which Plaintiff filed the State Court Action, Defendants' respective principal places of business were located in Cincinnati, Ohio and New York, New York. Id. at ¶7. All of the directors of each of the Defendants reside and work in Ohio, and the officers and senior management who direct, control, and coordinate Defendants' activities primarily do so either from Cincinnati, Ohio or New York, New York. Id. at ¶8. The primary executive, administrative, financial and management functions for each of the Defendants are conducted in either Ohio or New York. Id.

The defendants designated in the Complaint as Does 1-10 are fictitious defendants whose citizenship is to be disregarded for purposes of removal pursuant to 28 U.S.C. § 1441(a). *See also Soliman v. Philip Morris, Inc.* (9th Cir. 2002) 311 F.3d 966, 971.

Accordingly, there is complete diversity among the parties.

3. Amount in Controversy

The appropriate measure of the jurisdictional amount in controversy is "the litigation value of the case assuming that the allegations of the complaint are true and assuming a jury returns a verdict for the plaintiff on all claims made in the complaint." *Jackson v. American Bankers Insurance Co. of Florida*, 976 F.Supp.1450, 1454 (S.D. Ala. 1997), *citing Burns v. Windsor Insurance Co.*, 31 F.3d 1092, 1096 (11th Cir.

3.

1994). It is not determined by "the low end of an open-ended claim," but by "a reasonable reading of the value of the rights being litigated." *Angus v. Shiley, Inc.*, 989 F.2d 142, 146 (3d Cir. 1993). *See also Hart v. Washington State Apple Advertising Commission*, 432 U.S. 333, 347 (1977).

In her Summons and Complaint, Plaintiff does not allege the total amount of damages sought, alleging only that this is an unlimited civil case where the damages sought exceed $25,000, including general and compensatory damages, attorneys' fees, and punitive damages. However, on or about May 22, 2013, Jihad Smaili, an attorney representing Plaintiff, demanded $40,000 from Defendants to settle her claims. Ex. "D," Declaration of JoAnn Nelson at ¶2.

In addition to monetary relief, the Complaint seeks equitable relief, including a mandatory injunction requiring "the appointment of an independent special master with medical experience and training tasked with making good faith determinations as to whether a certain medical treatment recommended by a physician should or should not be authorized." Complaint at ¶257(B). The cost of appointing an independent special master with medical experience and training to make medical treatment determinations for the Plaintiff alone would be in excess of $10,000, based on a reasonable estimate of $200 per hour for a special master. Ex. "E," Declaration of Ann Schnure at ¶5. Moreover, even if the special master spent only one hour making medical determinations on each additional Macy's worker's compensation claim, the direct cost to Macy's in the State of California alone would be in excess of $370,000.

4.

Id. at ¶6.

In addition, the Complaint seeks a mandatory injunction ordering that Macy's develop and provide "sensitivity training for its entire workforce relative to a zero-tolerance policy of non-discrimination, harassment and/or retaliation … as well as training reflecting and fostering mutual respect and understanding for all individuals notwithstanding their age, religion, national origin, medical condition or disability." Complaint at ¶257(C). The direct cost to Macy's of developing and implementing new sensitivity and diversity training programs for Defendants' workforce just in the State of California would be more than $102,931.60. Ex. "B," Declaration of Julie Avins at ¶¶12-13.

The test for determining the amount in controversy is the "pecuniary result to either party which the judgment would directly produce." *See Ridder Bros. Inc., v. Blethen*, 142 F.2d 395, 399 (9th Cir. 1944) (holding that for purposes of calculating amount in controversy, "the value of the thing sought to be accomplished by the action may relate to either or any party to the action") (internal quotation omitted)). "[W]here the value of a plaintiff's potential recovery is below the jurisdictional amount, but the potential cost to the defendant of complying with the injunction exceeds that amount, it is the latter that represents the amount in controversy for jurisdictional purposes." *In re Ford Motor Company*, 264 F.3d 952, 958 (9th Cir. 2001). The direct cost to Macy's of complying with the requested injunctive relief just in the State of California would be more than $482,931.60, plus at least $40,000

5.

in damages, in addition to attorney's fees, punitive damages and other monetary relief sought by Plaintiff.

Accordingly, the amount in controversy exceeds $75,000 in accordance with 28 U.S.C. §1332(a)(1).

4.    Venue

Venue is proper in this district and division because the Orange County Superior Court is located within the federal Central District of California and this is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

5.    Diversity Jurisdiction

This action is one under which the Court has original jurisdiction pursuant to 28 U.S.C. §1332 and which may be removed to this Court pursuant to 28 U.S.C. § 1441, as it is a civil action in which neither Plaintiff nor Defendants are citizens of the same state and in which the amount in controversy exceeds $75,000 exclusive of interest and costs.

6.    Timeliness of Notice of Removal

Defendants first determined that this case was removable on October 28, 2013 when they were served with this lawsuit.  This Notice of Removal is being filed within thirty days of Defendants' receipt of the Summons and Complaint and therefore is timely under 28 U.S.C. § 1446(b).

6.

7.    <u>Notice to the Orange County Superior Court</u>

In conjunction with the filing of this Notice of Removal, Defendant will notify the Orange County Superior Court of the removal of this action.

WHEREFORE, Defendants Macy's West Stores, Inc., Macy's Corporate Services, Inc. and Macy's Retail Holdings, Inc. respectfully request that this Court exercise jurisdiction over the above-captioned action and issue such further orders and processes as may be necessary herein.

Dated: November 26, 2013

SHIRLEY D. DEUTSCH
SCHWARTZ & DEUTSCH, LLP


SHIRLEY D. DEUTSCH
Attorneys for Defendants
MACY'S WEST STORES, INC.,
MACY'S CORPORATE SERVICES,
INC., AND MACY'S RETAIL
HOLDINGS, INC.

7.

# EXHIBIT A

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

ELECTRONICALLY FILED
Superior Court of California,
County of Orange
10/17/2013 at 08:41:07 AM
Clerk of the Superior Court
By Eleanor Sutter,Deputy Clerk

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
MACY'S WEST STORES, INC., an Ohio Corporation doing business in the State of California; Additional Parties Attachment Form Attached.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
HOURVASH DEZHAM

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have **30 CALENDAR DAYS** after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* ORANGE COUNTY SUPERIOR COURT<br>700 W. Civic Center Dr., Santa Ana, California 92701 | **CASE NUMBER:**<br>*(Número del Caso):*<br>30-2013-00681865-CU-WT-CJC<br>Judge David Chaffee |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Jihad M. Smaili, Esq., 600 W. Santa Ana Blvd., Suite 202, Santa Ana, CA 92701 (714) 547-4700

| | | | |
|---|---|---|---|
| DATE: 10/17/2013 | Alan Carlson, Clerk of the court | Clerk, by *Eleanor Sutter* | , Deputy |
| *(Fecha)* | | *(Secretario)* | *(Adjunto)* |

ELEANOR SUTTER

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**[SEAL]**

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☐ on behalf of *(specify)*:

   under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)

   ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Jihad M. Smaili, Esq. [262219]<br>SMAILI & ASSOCIATES, P.C.<br>Civic Center Plaza Towers<br>600 W. Santa Ana Blvd., Suite 202, Santa Ana, CA 92701<br>TELEPHONE NO.: 714 547 4700   FAX NO.: 714 547 4710<br>ATTORNEY FOR *(Name):* Plaintiff Hourvash Dezham | ELECTRONICALLY FILED<br>Superior Court of California,<br>County of Orange<br>10/17/2013 at 08:51:07 AM<br>Clerk of the Superior Court<br>By Eleanor Sutter, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
STREET ADDRESS: 700 W. Civic Center Dr.
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Ana 92701
BRANCH NAME: Central Justice Center

CASE NAME:
Hourvash Dezham v. Macy's West Stores, Inc.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 30-2013-00681865-CU-WT-CJC |
|---|---|---|
| ☑ Unlimited   ☐ Limited<br>(Amount   (Amount<br>demanded   demanded is<br>exceeds $25,000)   $25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE: David Chaffee<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☑ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.☑ monetary   b.☑ nonmonetary; declaratory or injunctive relief   c.☑ punitive
4. Number of causes of action *(specify):* 16
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*

Date: October 17, 2013
Jihad M. Smaili, Esq.
_____
(TYPE OR PRINT NAME)        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF ORANGE**

**ALTERNATIVE DISPUTE RESOLUTION (ADR)**
**INFORMATION PACKAGE**

**NOTICE TO PLAINTIFF(S) AND/OR CROSS-COMPLAINANT(S):**

**Rule 3.221(c) of the California Rules of Court requires you to serve a copy of the ADR Information Package along with the complaint and/or cross-complaint.**

California Rules of Court – Rule 3.221
Information about Alternative Dispute Resolution (ADR)

(a) Each court shall make available to the plaintiff, at the time of filing of the complaint, an ADR Information Package that includes, at a minimum, all of the following:

(1) General information about the potential advantages and disadvantages of ADR and descriptions of the principal ADR processes.

(2) Information about the ADR programs available in that court, including citations to any applicable local court rules and directions for contacting any court staff responsible for providing parties with assistance regarding ADR.

(3) Information about the availability of local dispute resolution programs funded under the Dispute Resolutions Program Act (DRPA), in counties that are participating in the DRPA. This information may take the form of a list of the applicable programs or directions for contacting the county's DRPA coordinator.

(4) An ADR stipulation form that parties may use to stipulate to the use of an ADR process.

(b) A court may make the ADR Information Package available on its Web site as long as paper copies are also made available in the clerk's office.

(c) The plaintiff must serve a copy of the ADR Information Package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR Information Package on any new parties to the action along with the cross-complaint.

**Less discovery.** There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

**Additional costs.** The neutral may charge a fee for his or her services. If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

**Effect of delays if the dispute is not resolved.** Lawsuits must be brought within specified periods of time, known as statues of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

### TYPES OF ADR IN CIVIL CASES.

The most commonly used ADR processes are arbitration, mediation, neutral evaluation and settlement conferences.

**Arbitration.** In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Generally, there is no right to appeal an arbitrator's decision. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

   **Cases for Which Arbitration May Be Appropriate.** Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

   **Cases for Which Arbitration May <u>Not</u> Be Appropriate.** If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Mediation.** In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

   **Cases for Which Mediation May Be Appropriate.** Mediation may be particularly useful when parties have a relationship they want to preserve. So when family members, neighbors, or business partners have a dispute, mediation may be the ADR process to use. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

   **Cases for Which Mediation May <u>Not</u> Be Appropriate.** Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Neutral Evaluation.** In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name & Address)*: | *FOR COURT USE ONLY* |
|---|---|
| Telephone No.:                          Fax No. (Optional):<br>E-Mail Address (Optional):<br>ATTORNEY FOR *(Name)*:                    Bar No: | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**<br>**JUSTICE CENTER:**<br>☐ Central - 700 Civic Center Dr. West, Santa Ana, CA 92701-4045<br>☐ Civil Complex Center - 751 W. Santa Ana Blvd., Santa Ana, CA 92701-4512<br>☐ Harbor-Laguna Hills Facility – 23141 Moulton Pkwy., Laguna Hills, CA 92653-1251<br>☐ Harbor – Newport Beach Facility – 4601 Jamboree Rd., Newport Beach, CA 92660-2595<br>☐ North – 1275 N. Berkeley Ave., P.O. Box 5000, Fullerton, CA 92838-0500<br>☐ West – 8141 13th Street, Westminster, CA 92683-0500 | |
| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | |
| **ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION** | **CASE NUMBER:** |

Plaintiff(s)/Petitioner(s),_____

_____

and defendant(s)/respondent(s), _____

_____

agree to the following dispute resolution process:

☐  Mediation

☐  Arbitration (must specify code)
          ☐Under section 1141.11 of the Code of Civil Procedure
          ☐Under section 1280 of the Code of Civil Procedure

☐  Neutral Case Evaluation

The ADR process must be completed no later than 90 days after the date of this Stipulation or the date the case was referred, whichever is sooner.

☐  I have an *Order on Court Fee Waiver* (FW-003) on file, and the selected ADR Neutral(s) are eligible to provide pro bono services.

☐  The ADR Neutral Selection and Party List is attached to this Stipulation.

We understand that there may be a charge for services provided by neutrals.  We understand that participating in an ADR process does not extend the time periods specified in California Rules of Court rule 3.720 et seq.

Date: _____
                   **(SIGNATURE OF PLAINTIFF OR ATTORNEY)**       **(SIGNATURE OF PLAINTIFF OR ATTORNEY)**

Date: _____
                   **(SIGNATURE OF DEFENDANT OR ATTORNEY)**      **(SIGNATURE OF DEFENDANT OR ATTORNEY)**

**ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION**

Jihad M. Smaili, Esq. [262219]
SMAILI & ASSOCIATES, PC
Civic Center Plaza Towers
600 W. Santa Ana Blvd, Suite 202
Santa Ana, California 92701
714-547-4700
714-547-4710 (facsimile)
jihad@smaililaw.com

Attorney for Plaintiff, Hourvash Dezham

ELECTRONICALLY FILED
Superior Court of California,
County of Orange
10/17/2013 at 08:51:07 AM
Clerk of the Superior Court
By Eleanor Sutter,Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ORANGE–CENTRAL JUSTIC CENTER

| | |
|---|---|
| HOURVASH DEZHAM,<br><br>　　　　Plaintiff,<br><br>v.<br><br>MACY'S WEST STORES, INC., an Ohio corporation doing business in the State of California; MACY'S CORPORATE SERVICES, INC., a Delaware corporation doing business in the State of California; MACY'S RETAIL HOLDINGS, INC., a New York corporation doing business in the State of California; and DOES 1 - 10, inclusive,<br><br>　　　　Defendants. | CASE NUMBER: 30-2013-00681865-CU-WT-CJC<br>**COMPLAINT FOR DAMAGES &<br>INJUNCTIVE RELIEF**<br><br>　1.　**Age Discrimination**<br>　2.　**Religious Discrimination**<br>　3.　**Race/National Origin Discrimination**<br>　4.　**Physical & Mental Disability/Medical<br>　　　Condition Discrimination**<br>　5.　**Discrimination Based On<br>　　　Participation In Protected Conduct**<br>　6.　**Failure To Prevent Or Remedy<br>　　　Discrimination & Harassment**<br>　7.　**Retaliation**<br>　8.　**Harassment**<br>　9.　**Intentional Infliction of Emotional<br>　　　Distress**<br>　10.　**Refusal To Accommodate<br>　　　Disability/Medical Condition**<br>　11.　**Violation of Article I, §8 of the<br>　　　California Constitution**<br>　12.　**Refusal To Hire/Reinstate**<br>　13.　**Wrongful Termination**<br>　14.　**Failure To Pay Vacation Time/Wages**<br>　15.　**Violation of Labor Code §226(b)**<br>　16.　**Unfair Competition**<br><br>Unlimited Jurisdiction, amount exceeds $25,000<br>Judge David Chaffee<br><br>INJUNCTIVE RELIEF REQUESTED<br><br><u>Jury Demand Endorsed Hereon</u> |

Smaili & Associates, P.C.

1

2     Plaintiff, HOURVASH DEZHAM (hereinafter "Plaintiff" or "DEZHAM"), brings this

3   action against Defendant MACY'S WEST STORES, INC., MACY'S CORPORATE

4   SERVICES, INC., and MACY'S RETAIL HOLDINGS, INC. (hereinafter together as "Macy's"

5   or "Defendant") and other Defendants for general, compensatory and punitive damages;

6

7   prejudgment interest, costs and attorneys' fees; and other appropriate and just relief due to

8   Defendants' unlawful and tortious conduct.  For any allegations based on information and belief,

9   Plaintiff asserts that these allegations are likely to have evidentiary support after a reasonable

10   opportunity for further investigation or discovery.

11

12     As grounds for this relief, Plaintiff complains of Defendants, and each of them, and for

13   her causes of action alleges the following:

14                          **GENERAL ALLEGATIONS**

15     1.     At all times herein mentioned, Defendant Macy's was and is a private business

16   with nationwide retail locations.  One of its locations is located in the South Coast Plaza Mall,

17   County of Orange, State of California.

18

19     2.     At all times herein relevant, Defendant Macy's was an employer subject to the

20   California Fair Employment and Housing Act, Government Code §12900, *et seq.* and as such

21   was barred from harassing, discriminating or retaliating against DEZHAM in personnel,

22   scheduling, employment, promotion, advancement, retention, hiring and other decisions relating

23   to DEZHAM's employment on the basis of disability, participation in protected activity, sex,

24   gender, religion, national origin, and other immutable characteristics.  Government Code

25   §12926(d).

26

27

28

Complaint for Damages & Injunctive Relief

3.    At all times herein mentioned, DEZHAM is an adult woman and has been a resident of Orange County, State of California since 1998.  The entirety of events alleged herein took place within the County of Orange, State of California.

4.    At all relevant times, that each of the Defendants, including Does 1 - 10, inclusive, was the agent or employee of each of the remaining Defendants and, in doing the things as alleged herein, was acting within the course and scope of said agency or employment.

5.    DEZHAM is ignorant of the true names and capacities of Defendants sued as Doe 1 – Doe 10, inclusive, and therefore sues these Defendants, whether individual, corporate, associate or otherwise, by these fictitious names.  DEZHAM will request leave of court to amend this Complaint to allege their true names and capacities when the same have been ascertained. DEZHAM is informed and believes and thereon alleges that each of the fictitiously named Defendants are legally responsible in some manner for the events, conduct and occurrences alleged in this Complaint, and each proximately caused the injury and damages to Plaintiff as herein alleged.

6.    Whenever this Complaint references any act of Defendants, such allegations shall be deemed to mean all named Defendants and Does 1-10, or their officers, agents, managers, representatives, employees, heirs, assignees, customers and tenants, did or authorized such acts while actively engaged in the operation, management, direction or control of the affairs of Defendants and while acting within the scope of their duties.

7.    Defendants, and each of them, had full knowledge or should have reasonably known of the true nature of the wrongful conduct of each other Defendant, and aided and abetted such wrongful conduct, by condoning such conduct, encouraging such conduct, providing substantial assistance and/or adopting the acts of others.

8.    Upon information and belief, Defendants also aided and abetted the wrongful

conduct of each other by giving substantial assistance and encouragement that, independently, was wrongful in and of itself.  Defendants, and each of them, had full knowledge or should have reasonably known of the true nature of the wrongful conduct of each other Defendant, and aided and abetted such wrongful conduct, by condoning such conduct, encouraging such conduct, providing substantial assistance and/or adopting the acts of others.  Defendants' failure to supervise, control, direct, manage, and counsel those agents throughout DEZHAM's employment ratified, condoned and/or encouraged the discriminatory behavior and enabled agents to believe that their conduct was appropriate.  DEZHAM complained to her superiors with regard to the disparate treatment, to no avail.  DEZHAM felt unwelcomed at the workplace and feared further abuse and retaliation.  Further, Defendants have a systemic and wide-spread policy of discriminating against, retaliating against, and failing to reward employees that have disabilities, and especially those who complain their treatment.  By failing to stop the discrimination, harassment and retaliation, the Defendants ratified the harassing, discriminatory and retaliatory conduct which, in turn, directly caused a vicious cycle allowing DEZHAM's coworkers, supervisors, and other staff, upon information and belief, to act discriminatorily toward DEZHAM with impunity.  Defendants also aided and abetted the wrongful conduct of each other by giving substantial assistance and encouragement that, independently, was wrongful in and of itself.

9.     DEZHAM is informed and believes, and upon such information and belief alleges, that Defendants, and each of them, conspired and agreed among themselves to do the acts complained of herein and were, in committing such acts, acting pursuant to and in furtherance of said conspiracy.  Plaintiff further alleges that each Defendant sued herein is jointly and severally responsible and liable to her for the damages alleged herein.

## FACTUAL ALLEGATIONS

10.     DEZHAM is an Iranian-American Muslim woman, 56 years of age.  She currently resides, and has resided since 1998, in Orange County, California.

11.     On August 14, 1997, DEZHAM was hired by Macy's Clearance Store at the San Vallco Mall in St. Jose, California as a Sales Associate.  DEZHAM then relocated to Orange County, California in 1998 and transferred to Macy's South Coast Plaza location as a salesperson and worked there until she was wrongfully terminated effective January 24, 2012.

12.     After the 9/11 attacks, pay for salespersons was changed from that based on an hourly rate plus commission to that of a flat hourly rate (ultimately became $16) plus approximately $.25/hour lump sum if certain preset sales goals were met.  In addition, DEZHAM was a "specialist" for the lingerie brands "Wacol" and "Be Tempted."  If Dezham met her sales goals, she would be paid $150 more per month in addition to a quarterly bonus of $250 worth of free lingerie.

13.     Prior to her injury, DEZHAM was a top salesperson in her department.

14.     On July 9, 2010, DEZHAM broke her left toe (3rd metatarsal) as a result of a work-related injury.  She was placed off of work by her doctor until August 30, 2010 so that her injury could heal.

15.     During her medical leave, she was prescribed pain medication which rendered her unable to operate a car prior to returning to work.  Thereafter, her HR manager, Roberta Eagle, demanded that DEZHAM come back to work.  DEZHAM advised Ms. Eagle that she was on prescribed pain medication and was unable to drive.  Ms. Eagle instructed DEZHAM to take a bus and get to work.

16.     When DEZHAM returned to work, she was given modified sedentary duties

which allowed her to sit down and perform non-sales-related tasks, which she performed until January of 2011.

17.     Although DEZHAM was on modified duties geared at keeping her off of my feet (as instructed by her physician), DEZHAM's managers would constantly ask DEZHAM to go to the sales floor to help out the other sales associates.  As DEZHAM did not want to lose her job, she complied even though it caused her a lot of pain, discomfort and delayed the proper healing and betterment of her toe.  As a direct result, DEZHAM developed a hernia and severe back pain.

18.     During the times when DEZHAM would be required to work on the sales floor, the pain was so unbearable that she would ask her co-workers and managers to place a chair for her in a certain location so that she could sit and rest her feet.

19.     Judy Wilson, a sales manager, along with other managers, would constantly ask DEZHAM's co-workers to place/move DEZHAM's chair around the store so that DEZHAM could perform sales-related tasks.  At the same time, DEZHAM's managers and co-workers would make derogatory, degrading and offensive comments relative to DEZHAM's disability such as, without limitation: "She wants us to put a chair down for her while she does that?" "Can we have your job?" "We still don't understand what is wrong with your foot," and "All my friends have big surgeries and they come back to the floor, DEZHAM don't know what your excuse is."

20.     Although DEZHAM was on strict modified duties as a result of her injuries, her managers and co-workers would demand that DEZHAM help out on the sales floor.  When DEZHAM did help out at great pain and discomfort to herself, they would make fun of her disability.  As a direct result of her attempts to meet the goals and expectations set for her by her

managers and co-workers, DEZHAM further exacerbated the hernia and worsened the severe

back pain which necessitated pain management treatment.

21.     After three months or so of modified duties, Defendant informed DEZHAM that

Defendant no longer had a job for her that could facilitate or accommodate her medical

restrictions and disabilities which arose out of the one-the-job injury she had suffered.

22.     Roberta Eagle, HR manager, demanded that DEZHAM have her doctor "change

the limitations" that her doctor had ordered; otherwise "Macy's will order a scooter for you and

you can give us a ride!" The reason for this demand was to ensure that DEZHAM would return

to the sales floor because her managers and co-workers alike insisted that DEZHAM was

feigning her injuries and pain and did not want DEZHAM to get away with it.

23.     A scooter was in fact ordered.  However, the scooter was delayed in arriving at

the store and DEZHAM was forced to get a physician's note changing her medical/physical

limitations so as to allow her to be on the floor for a maximum of two (2) hours at a time in the

meantime.

24.     At this time, DEZHAM was in so much pain and discomfort that she was not able

to stand on her feet for *any* length of time.

25.     The HR manager further informed DEZHAM that if the scooter doesn't work out

(i.e. does not facilitate her return to the sales floor), then DEZHAM must go on a leave of

absence.  When DEZHAM inquired as to what a leave of absence meant, and how her pay would

be affected work while on such leave, DEZHAM was told "Don't worry about it!"  DEZHAM

also asked for a copy of the benefit manual for further explanation of leave of absence and was

told they did not have one.

26.     When the scooter did arrive and she began to utilize it, DEZHAM would still be

forced to be work on her feet.

27.   All salespeople are given a sales goal upon punching in which is aimed at increasing average sales. This sales goal became mandatory for all salespeople in the past few years. When DEZHAM was on modified duty and not on the sales floor, she would not be given a sales goal because DEZHAM was not supposed to be on the sales floor. While DEZHAM was utilizing a scooter, however, DEZHAM did receive goals. But DEZHAM's managers and co-workers would ask her to help clean fitting rooms and other non-sales tasks. As a result, DEZHAM would not be able to make, organize and set up all of the sales racks. DEZHAM would thus be treated differently because of her injury.

28.   However, DEZHAM was given sales goals to meet which Defendants knew DEZHAM could not meet because DEZHAM was not selling or making sales. As a result, DEZHAM requested from her manager that her goals be lowered so that DEZHAM would be able to meet the goals. The request was denied by DEZHAM's manager, Ms. Eagle, and her sales goal was kept the same as the other salespeople notwithstanding her disability. As a direct result, DEZHAM was unable to meet her goals and her pay decreased significantly.

29.   DEZHAM's specialty was taken away by Ms. Wilson, her manager, as a result of DEZHAM's failure to meet her goals. Also due directly to her medical disability, DEZHAM's specialty was given to someone DEZHAM had previously trained for the sales floor and who had less seniority and experience as DEZHAM.

30.   DEZHAM's manager, Judy Wilson, did not accommodate DEZHAM due to DEZHAM's Iranian national origin, religion, and her prior complaint about Wilson to another manager relating to Wilson's discriminatory and condescending treatment of DEZHAM. DEZHAM had previously confronted Wilson about her disparate treatment of DEZHAM in the workplace. Other employees have shared with DEZHAM that they also believed that they were treated differently by Wilson due to their immutable characteristics/race/color/national

origin.

31.     At one time, Ms. Wilson, while DEZHAM was busy with a rush of customers, confronted her before them and said, "Why do you have to embarrass me in front of other managers? Come down with me right now! I don't know why I have you in my life!"

32.     In addition, Wilson would harass DEZHAM to do the things immediately even after DEZHAM would politely ask that she be allowed to finish assisting customers.

33.     While using a scooter to perform her tasks, DEZHAM's manager and co-workers would constantly lecture her, sometimes in front of customers, to move the scooter from the cash register area in a very degrading and condescending manner.

34.     DEZHAM's benefits included 20 paid days of vacation per year. At time of her termination, DEZHAM had at least 17 days of earned but not paid vacation days accrued which were not paid to DEZHAM even after they were repeatedly requested.

35.     As a result of her continued pain and suffering and limping in order to perform her tasks on the floor, and because DEZHAM was no longer able to stand up and walk for long, DEZHAM requested that Defendant send her a list of orthopedic surgeons that she could see.

36.     On May 27, 2011, DEZHAM's physician took her off work and placed her in a boot for three months directly due to the work that DEZHAM was forced to perform notwithstanding the clear instructions to the contrary by her doctor.  Her doctor also sought to perform x-rays in order to better diagnose and treat her injuries.  However, Defendant rejected DEZHAM's doctor's requests, and acted not to authorize these procedures and demanded that DEZHAM get those x-rays and treatments from her physician notwithstanding the fact that DEZHAM had suffered an on-the-job injury and had pending workers' compensation claims. DEZHAM was also denied indicated medical diagnostic scans of the lumbar spine, pain management and psychiatric treatment.  DEZHAM was also instructed, repeatedly, to convince

1    her doctor to change her allowed duties, and insisted that she was feigning her injury (which lead

2    to the use of the scooter).  Defendants had hoped that by ordering the scooter, DEZHAM would

3    somehow be embarrassed and simply agree that she was feigning her injuries and go back to the

4    sales floor.

       37.     DEZHAM experienced retaliation by Defendants after she applied for workers'

6    compensation benefits directly because she had applied for these benefits.  Defendants refused to

7   

8    authorize required medical treatment, including, without limitation, physical therapy.

9    Defendants simply sent her to a general practitioner. After DEZHAM insisted, Defendant sent

10    her a list of orthopedic surgeons. The orthopedic physician DEZHAM chose from within the

11   

12    network was unable to do anything to alleviate the severe pain she was experiencing and she was

13    sent to a pain management specialist.

14        38.     As a result of all of the above, DEZHAM also became depressed and sought the

15    assistance of a psychiatrist.  Defendants, and their lawyers, through the insurance adjuster,

16   

17    retaliated against DEZHAM by acting to discontinue the pain management and psychiatry

18    treatment that was ordered as well as denying a medically necessary MRI that was ordered by

19    her physician on June 11, 2012.

20        39.     Defendants terminated DEZHAM's employment on or about January 24, 2012

21    without good cause, and after DEZHAM had filed a workers' compensation claim.  At the time

22    she was terminated, DEZHAM temporarily totally disabled.  Defendants' conduct in terminating

23    DEZHAM constituted discrimination, retaliation, and wrongful termination.

25        40.     In March of 2013, DEZHAM's primary doctor released her back to work.  The

26    document Defendants utilized to terminate DEZHAM's employment expressly provided that she

27    was free to re-apply for employment after her doctor releases her.  Shortly after she was released

28    back to work in March of 2013, DEZHAM applied for a position with Macy's as a retail sales

Smaili & Associates, P.C.

associate, the same position that she previously held for approximately 15 years. However, DEZHAM received a communication from Macy's indicating that Macy's was "unable to consider [DEZHAM's] application further for this opportunity."

41. Defendant's conduct in failing to consider DEZHAM for a position she excelled at for many years constitutes retaliation and discrimination based on age, disability, assertion of rights under the law (filing of DFEH charge), and, without limitation, the filing of DEZHAM's workers' compensation claim.

42. On or about May 17, 2013, DEZHAM applied to Macy's and Macy's Home for a sales position, and applied again thereafter also in May of 2013. DEZHAM was ultimately interviewed on June 1, 2013 for the Macy's Home position. The person that interviewed DEZHAM, Elizabeth Villela, knew about DEZHAM's disability and the facts surrounding her on-the-job injury at Macy's. Ms. Villela commented on DEZHAM's disability/injury during the interview. DEZHAM was not offered a position notwithstanding being released back to work, her competency, long history and experience in sales with Macy's, and further without any regard to Macy's invitation to DEZHAM in its letter of termination for DEZHAM to apply for reinstatement upon being released back to work by DEZHAM's doctor (which took place). In denying her application for employment, Defendants indicated that DEZHAM had strong employment experience and credentials. Defendants failed to explain to her why they interviewed her and then denied her application because there was no available position.

43. Notwithstanding her credentials and experience, DEZHAM was not even interviewed for the Macy's position (main store).

44. Although Defendants indicated that they would contact her if any position opened up for her, Macy's has failed to do so to date.

45.     In addition, Defendants refused to authorize medical treatment for DEZHAM in her workers' compensation claim, and actually ordered that her pain management, psychiatric and diagnostic (MRI) treatment be denied and/or discontinued in direct retaliation for DEZHAM having exercised her rights and participated in protected activity.  Defendants did so knowing that the referenced medical treatments/procedures were medically indicated, all in direct retaliation for DEFENDANT having exercised her rights (filing claims with DFEH, reporting job-related injury, proceeding with workers' compensation benefits, etc.)  Therefore, Defendants acted maliciously, and proceeded in bad faith in denying DEZHAM such medical treatment.

46.     On October 17, 2012, DEZHAM filed her first charge with DFEH, case number 48017-22898.  She received her right to sue letter on October 17, 2012.  On April 23, 2013, DEZHAM filed her second charge with DFEH, case number 48017-49177, and received her right to sue letter on April 23, 2013.  DEZHAM's third charge with DFEH was filed, and her right to sue letter was received, on September 25, 2013 in case number 168907-71012.

47.     DEZHAM submits that she was discriminated against, harassed, and subjected to malicious retaliation by denying her medically indicated treatments/procedures, making offensive and derogatory statements to her relating to her injuries, refusing to set fair sales goals, terminating her employment, failing to participate in a good faith interactive process, failing to reasonably accommodate her disability, and repeatedly refusing to reinstate/rehire her, all for having claimed a work-related injury, having filed a claim with the Workers' Compensation Board, having filed her DFEH charges, and, at least in part, due to her medical condition, age, race, religion, national origin and disability.

48.     The conduct described hereinabove and below was continuing in nature, and comprised general hostility toward DEZHAM's race, religion, national origin, participation in protected activity and disability.

49.     DEZHAM's harassment was not only at the hands of management, but included participation from her co-workers.

50.     Well into DEZHAM's medical leave, Defendants failed to participate in a good faith effort to reunite DEZHAM with her job.  For many months, the interactive process was non-existent.

51.     No reasonable and good-faith efforts were made by Defendants in order to accommodate DEZHAM's disability which placed her on medical leave.

52.     Upon information and belief, DEZHAM was not given a good faith interactive process while others were given excessively liberal and more than reasonable accommodation.

53.     Defendants failed to offer or make reasonable accommodations for DEZHAM's documented disability after DEZHAM requested same in direct retaliation for the above-alleged events and protected conduct.

54.     Defendants failed to take any reasonable steps to prevent the harassment and discrimination, and resulting retaliation, nor to make reasonable accommodations for DEZHAM's disabilities and/or medical condition.

55.     Even subsequent to DEZHAM's DFEH filings, Defendants continued to discriminate against, harass and retaliate against DEZHAM in direct defiance and violation of California law as follows: Defendants failed to participate in a good faith interactive process or seriously consider reasonable accommodation based of DEZHAM's documented medical conditions/disabilities; failed to take any action to prevent the harassment experienced by DEZHAM due to her race, religion, national origin, disability and participation in protected activity (filing of DFEH charge, filing of workers' compensation claim, complaining about her treatment, etc.); denying DEZHAM indicated medical treatment arising out of the on-the-job injury DEZHAM suffered in direct retaliation against DEZHAM; failing to interview DEZHAM

1  for reinstatement/new job due to DEZHAM's medical disability, race, religion, national origin

2  and participation in protected activity; failing to hire DEZHAM for reinstatement/new job due to

3  DEZHAM's medical disability, race, religion, national origin and participation in protected

4  activity; and for terminating DEZHAM's employment for the same reasons.

5

6       56.     The treatment that DEZHAM received at the hands of Defendants and their agents

7  described above was severe, pervasive, and unwelcomed, leading to an ongoing hostile work

8  environment which DEZHAM endured for the duration of her time at Macy's after her on-the-

9  job injury, continued to endure while on medical leave, and endures today after her termination

10  and Defendants' failure to consider her for reinstatement/rehiring.

11

12      57.     Throughout her employment with Defendants, DEZHAM experienced varying

13  forms of discrimination and harassment.  This conduct was continuous in nature and remained

14  unabated.

15      58.     DEZHAM avers that she was constantly undermined, harassed and discriminated

16  against specifically due to her disability, race, national origin, age and participation in protected

17  activity.  As a result, DEZHAM has suffered, and continues to suffer, severe emotional and

18  mental anguish, stress, loss of sleep/insomnia, hernia, crying spells, social anxiety, headaches,

19

20  fever, back pain, body aches, panic attacks, generalized anxiety, diarrhea, depression, lack of

21  appetite, nightmares, and the like.  DEZHAM further suffers from Reflex Sympathetic

22  Dystrophy Syndrome (RSD) and Chronic/Complex Regional Pain Syndrome.  In addition,

23  DEZHAM suffers from pain in the right foot and right knee directly due to overcompensating for

24  her injury and pain on her left side/foot (antalgic gait).

25

26

27

28

## FIRST CAUSE OF ACTION

### AGE DISCRIMINATION

**In Violation of Public Policy and The Fair Employment and Housing Act**

(As To All Defendants and DOES 1-10)

59.     Plaintiff refers to all allegations contained in paragraphs 1-58, inclusive and by such reference incorporates the same herein as though fully realleged in detail.

60.     At all times herein mentioned, Government Code §§12940(a) and 12941 were in full force and effect and were binding on Defendants.  These sections require Defendants to refrain from discriminating against any employee over the age of 40.

61.     After years of wholly above-satisfactory, competent and diligent work performance to the significant profit of the Defendants, DEZHAM was notified by Defendants that she was being terminated owing to DEZHAM's injuries.  These reasons were, in part, a pretext designed to conceal Defendants' practice of discriminating against DEZHAM on the basis of her age.

62.     Although DEZHAM was not offered any alternative positions for which she was qualified, employees younger and with less experience than DEZHAM, upon information and belief, were retained in these alternative positions.

63.     DEZHAM believes and thereon alleges that her age was a factor in Defendants' decision to terminate her.  Such discrimination was in violation of the public policy of the State of California as reflected in Government Code §§12940(a) and 12941 and resulted in damage and injury to DEZHAM as alleged herein.

64.     As a proximate result of Defendants' willful, knowing, and intentional discrimination against DEZHAM, she has suffered and continues to suffer humiliation,

Complaint for Damages & Injunctive Relief

1  emotional distress, and mental and physical pain and anguish, all to her damage in a sum

2  according to proof.

3      65.    In light of Defendants' willful, malicious, knowing, and intentional discrimination

4  against DEZHAM, DEZHAM seeks an award of punitive and exemplary damages in an amount

5  according to proof.

6

7      66.    DEZHAM has incurred and continues to incur legal expenses, attorney fees and

8  medical bills.  DEZHAM is presently unaware of the precise amount of said expenses, bills and

9  fees and prays leave of court to amend this Complaint when said amounts are more fully known.

10      67.    As a direct result of Defendants' actions and failures to act, Defendants violated

11  the provisions of the Fair Employment and Housing Act:

12

13          Government Code, §12921.

14              (a) The opportunity to seek, obtain and hold employment
               without discrimination because of * * * age * * * is hereby
15              recognized as and declared to be a civil right.

16      68.    Defendants' failure to supervise, control, direct, manage, and counsel those agents

17  throughout DEZHAM's employment ratified, condoned and/or encouraged the discriminatory

18

19  behavior and enabled agents to believe that their conduct was appropriate.

20      69.    Defendants, and each of them, failed to offer counseling or comfort to Plaintiff

21  and sent the unmistakable message to her coworkers that such conduct is appropriate in the

22  workplace.

23

24      70.    Upon information and belief, Defendants have a systemic and wide-spread policy

25  of discriminating against, retaliating against, and failing to older employees, minorities and the

26  disabled.  By failing to stop the discrimination, harassment and retaliation, the Defendants

27  ratified the harassing, discriminatory and retaliatory conduct which, in turn, directly caused a

28

Smaili & Associates, P.C.

Complaint for Damages & Injunctive Relief

1  vicious cycle allowing Plaintiff's coworkers, supervisors, and other staff to act discriminatorily

2  toward Plaintiff with impunity.

3      71.   Upon information and belief, DEZHAM was replaced by Defendants with

4  someone below the age of 40.  At the time of his termination, DEZHAM was over 55 years old.

5      72.   The Fair Employment and Housing Act (hereinafter "FEHA"), codified in

6  Government Code §§12900, *et seq.*, makes it unlawful for an employer to discriminate against an

7

8  employee on the basis of the employee's age.

9      73.   Further, California Government Code §12940 prohibits employers from

10  discriminating against or harassing an employee in promotions, assignments, termination, term,

11

12  condition or privilege of employment on the basis of age.  California law further prohibits

13  harassment of employees by any person and requires employers to take all reasonable steps to

14  prevent harassment.  The law further provides for administrative fines and remedies including

15

16  front pay, back pay, promotion, reinstatement, cease-and-desist orders, attorney's fees, costs, and

17  damages for emotional distress.

18      74.   Defendants engaged in unlawful employment practices in violation of FEHA by

19  failing to investigate Plaintiff's complaints, having and enforcing rules that are discriminatory on

20  their face, and for promoting and adopting conduct that violates California's employment laws.

21  In addition, Defendants had a policy of retaliation, and did retaliate, against employees that

22

23  complained about unequal and discriminatory treatment in a direct effort to stifle such exercise

24  of rights.

25      75.   Plaintiff submits that her age was a motivating factor in the decision of

26  Defendants to mistreat her, discriminate against her, allow her to be harassed, deny her equal

27  access to opportunities to further her career, deny her the ability to fairly compete with her co-

28

**Complaint for Damages & Injunctive Relief**

1 workers, and further deny her opportunities extended to younger counterparts, and other

2 discrimination against her, in violation of the FEHA.

3      76.     As a direct, foreseeable, and proximate result of the wrongful conduct of each

4 Defendant as herein alleged, Plaintiff was harmed in mind and body, has suffered and continues

5 to suffer emotional distress and anguish, humiliation, substantial losses in salary/wages, bonuses,

6 advancement, opportunity for advancement, job benefits, and other employment benefits which

7 she would have received all to her damages in a sum within the jurisdiction of the Court to be

8 ascertained according to proof.

9      77.     Plaintiff is informed, believes, and based thereon, alleges that the outrageous

10 conduct of Defendants, and each of them, as alleged herein, was done with oppression and

11 malice by Plaintiff's supervisors and administrators, along with conscious disregard of Plaintiff's

12 rights, and were ratified by those other individuals who were managing agents of Defendants.

13      78.     These unlawful acts were further encouraged by Defendants and done with a

14 conscious disregard for Plaintiff's rights and with the intent, design, and purpose of injuring

15 Plaintiff.   The conduct of Defendants alleged hereinabove and below was done with malice,

16 fraud or oppression, and in reckless disregard of DEZHAM's rights under California law. As

17 such, DEZHAM is entitled to punitive damages within the meaning of Civ. Code §3294.

## SECOND CAUSE OF ACTION

## RELIGIOUS DISCRIMINATION

### In Violation of Public Policy and The Fair Employment and Housing Act

(As To All Defendants and DOES 1-10)

     79.     Plaintiff refers to all allegations contained in paragraphs 1-78, inclusive and by

such reference incorporates the same herein as though fully realleged in detail.

1   80.   At all times herein mentioned, Government Code §§12940(a) and 12941 were in

2   full force and effect and were binding on Defendants.  These sections require Defendants to

3   refrain from discriminating against any employee because of their religion.

4   81.   After years of wholly above-satisfactory, competent and diligent work

5   performance to the significant profit of the Defendants, DEZHAM was notified by Defendants

6   that she was being terminated owing to DEZHAM's injuries.  These reasons were, in part, a

7   

8   pretext designed to conceal Defendants' practice of discriminating against DEZHAM on the

9   basis of her religion, Islam.

10   82.   Although DEZHAM was not offered any alternative positions for which she was

11   qualified, employees of other religions and with less experience than DEZHAM, upon

12   information and belief, were retained or hired into in these alternative positions.

13   

14   83.   DEZHAM believes and thereon alleges that her religion was a factor in

15   Defendants' decision to terminate her.  Such discrimination was in violation of the public policy

16   of the State of California as reflected in Government Code §§12940(a) and 12941 and resulted in

17   

18   damage and injury to DEZHAM as alleged herein.

19   84.   As a proximate result of Defendants' willful, knowing, and intentional

20   discrimination against DEZHAM, she has suffered and continues to suffer humiliation,

21   emotional distress, and mental and physical pain and anguish, all to her damage in a sum

22   according to proof.

23   

24   85.   In light of Defendants' willful, malicious, knowing, and intentional discrimination

25   against DEZHAM, DEZHAM seeks an award of punitive and exemplary damages in an amount

26   according to proof.

27   

28

86.     DEZHAM has incurred and continues to incur legal expenses, attorney fees and medical bills. DEZHAM is presently unaware of the precise amount of said expenses, bills and fees and prays leave of court to amend this Complaint when said amounts are more fully known.

87.     As a direct result of Defendants' actions and failures to act, Defendants violated the provisions of the Fair Employment and Housing Act:

Government Code, §12921.

> (a) The opportunity to seek, obtain and hold employment without discrimination because of * * * religion * * * is hereby recognized as and declared to be a civil right.

88.     Defendants' failure to supervise, control, direct, manage, and counsel those agents throughout DEZHAM's employment ratified, condoned and/or encouraged the discriminatory behavior and enabled agents to believe that their conduct was appropriate.

89.     Defendants, and each of them, failed to offer counseling or comfort to Plaintiff and sent the unmistakable message to her coworkers that such conduct is appropriate in the workplace.

90.     Upon information and belief, Defendants have a systemic and wide-spread policy of discriminating against, retaliating against, and harassing older employees, minorities and the disabled. By failing to stop the discrimination, harassment and retaliation, the Defendants ratified the harassing, discriminatory and retaliatory conduct which, in turn, directly caused a vicious cycle allowing Plaintiff's coworkers, supervisors, and other staff to act discriminatorily toward Plaintiff with impunity.

91.     Upon information and belief, DEZHAM was replaced by Defendants with someone of a different religion than DEZHAM.

Complaint for Damages & Injunctive Relief

92. The Fair Employment and Housing Act (hereinafter "FEHA"), codified in Government Code §§12900, *et seq.*, makes it unlawful for an employer to discriminate against an employee on the basis of the employee's religion.

93. Further, California Government Code §12940 prohibits employers from discriminating against or harassing an employee in promotions, assignments, termination, term, condition or privilege of employment on the basis of religion. California law further prohibits harassment of employees by any person and requires employers to take all reasonable steps to prevent harassment. The law further provides for administrative fines and remedies including front pay, back pay, promotion, reinstatement, cease-and-desist orders, attorney's fees, costs, and damages for emotional distress.

94. Defendants engaged in unlawful employment practices in violation of FEHA by failing to investigate Plaintiff's complaints, having and enforcing rules that are discriminatory on their face, and for promoting and adopting conduct that violates California's employment laws. In addition, Defendants had a policy of retaliation, and did retaliate, against employees that complained about unequal and discriminatory treatment in a direct effort to stifle such exercise of rights.

95. Plaintiff submits that her religion was a motivating factor in the decision of Defendants to mistreat her, discriminate against her, allow her to be harassed, deny her equal access to opportunities to further her career, deny her the ability to fairly compete with her co-workers, further deny her opportunities extended to counterparts with different religions, ultimately terminate her employment, and other discrimination against her, in violation of the FEHA.

96. As a direct, foreseeable, and proximate result of the wrongful conduct of each Defendant as herein alleged, Plaintiff was harmed in mind and body, has suffered and continues

to suffer emotional distress and anguish, humiliation, substantial losses in salary/wages, bonuses, advancement, opportunity for advancement, job benefits, and other employment benefits which she would have received all to her damages in a sum within the jurisdiction of the Court to be ascertained according to proof.

97.     Plaintiff is informed, believes, and based thereon, alleges that the outrageous conduct of Defendants, and each of them, as alleged herein, was done with oppression and malice by Plaintiff's supervisors and administrators, along with conscious disregard of Plaintiff's rights, and were ratified by those other individuals who were managing agents of Defendants.

98.     These unlawful acts were further encouraged by Defendants and done with a conscious disregard for Plaintiff's rights and with the intent, design, and purpose of injuring Plaintiff.   The conduct of Defendants alleged hereinabove and below was done with malice, fraud or oppression, and in reckless disregard of DEZHAM's rights under California law.  As such, DEZHAM is entitled to punitive damages within the meaning of Civ. Code §3294.

## THIRD CAUSE OF ACTION

### RACE/NATIONAL ORIGIN DISCRIMINATION

### In Violation of Public Policy and The Fair Employment and Housing Act

### (As To All Defendants and DOES 1-10)

99.     Plaintiff refers to all allegations contained in paragraphs 1-98, inclusive and by such reference incorporates the same herein as though fully realleged in detail.

100.   At all times herein mentioned, Government Code §§12940(a) and 12941 were in full force and effect and were binding on Defendants.  These sections require Defendants to refrain from discriminating against any employee because of their race or national origin.

101.   After years of wholly above-satisfactory, competent and diligent work performance to the significant profit of the Defendants, DEZHAM was notified by Defendants

that she was being terminated owing to DEZHAM's injuries.  These reasons were, in part, a pretext designed to conceal Defendants' practice of discriminating against DEZHAM on the basis of her national origin, Iranian, and race, Persian.

102.    Although DEZHAM was not offered any alternative positions for which she was qualified, employees of other nationalities, races and origins and with less experience than DEZHAM, upon information and belief, were retained or hired into in these alternative positions.

103.    DEZHAM believes and thereon alleges that her national origin was a factor in Defendants' decision to terminate her.  Such discrimination was in violation of the public policy of the State of California as reflected in Government Code §§12940(a) and 12941 and resulted in damage and injury to DEZHAM as alleged herein.

104.    As a proximate result of Defendants' willful, knowing, and intentional discrimination against DEZHAM, she has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

105.    In light of Defendants' willful, malicious, knowing, and intentional discrimination against DEZHAM, DEZHAM seeks an award of punitive and exemplary damages in an amount according to proof.

106.    DEZHAM has incurred and continues to incur legal expenses, attorney fees and medical bills.  DEZHAM is presently unaware of the precise amount of said expenses, bills and fees and prays leave of court to amend this Complaint when said amounts are more fully known.

107.    As a direct result of Defendants' actions and failures to act, Defendants violated the provisions of the Fair Employment and Housing Act:

Government Code, §12921.

(a) The opportunity to seek, obtain and hold employment

without discrimination because of race * * * [or] national origin * * * is hereby recognized as and declared to be a civil right.

108.    Defendants' failure to supervise, control, direct, manage, and counsel those agents throughout DEZHAM's employment ratified, condoned and/or encouraged the discriminatory behavior and enabled agents to believe that their conduct was appropriate.

109.    Defendants, and each of them, failed to offer counseling or comfort to Plaintiff and sent the unmistakable message to her coworkers that such conduct is appropriate in the workplace.

110.    Upon information and belief, Defendants have a systemic and wide-spread policy of discriminating against, retaliating against, and failing to older employees, minorities and the disabled.  By failing to stop the discrimination, harassment and retaliation, the Defendants ratified the harassing, discriminatory and retaliatory conduct which, in turn, directly caused a vicious cycle allowing Plaintiff's coworkers, supervisors, and other staff to act discriminatorily toward Plaintiff with impunity.

111.    Upon information and belief, DEZHAM was replaced by Defendants with someone of a different national origin or race than DEZHAM.

112.    The Fair Employment and Housing Act (hereinafter "FEHA"), codified in Government Code §§12900, et seq., makes it unlawful for an employer to discriminate against an employee on the basis of the employee's national origin or race.

113.    Further, California Government Code §12940 prohibits employers from discriminating against or harassing an employee in promotions, assignments, termination, term, condition or privilege of employment on the basis of national origin or race.  California law further prohibits harassment of employees by any person and requires employers to take all reasonable steps to prevent harassment.  The law further provides for administrative fines and

1 │ remedies including front pay, back pay, promotion, reinstatement, cease-and-desist orders,

2 │ attorney's fees, costs, and damages for emotional distress.

3 │     114.   Defendants engaged in unlawful employment practices in violation of FEHA by

4 │ failing to investigate Plaintiff's complaints, having and enforcing rules that are discriminatory on

5 │
6 │ their face, and for promoting and adopting conduct that violates California's employment laws.

7 │ In addition, Defendants had a policy of retaliation, and did retaliate, against employees that

8 │ complained about unequal and discriminatory treatment in a direct effort to stifle such exercise

9 │ of rights.

10 │     115.   Plaintiff submits that her national origin was a motivating factor in the decision of

11 │
12 │ Defendants to mistreat her, discriminate against her, allow her to be harassed, deny her equal

13 │ access to opportunities to further her career, deny her the ability to fairly compete with her co-

14 │ workers, further deny her opportunities extended to counterparts with different national origins

15 │
16 │ and races, ultimately terminate her employment, and other discrimination against her, in

17 │ violation of the FEHA.

18 │     116.   As a direct, foreseeable, and proximate result of the wrongful conduct of each

19 │ Defendant as herein alleged, Plaintiff was harmed in mind and body, has suffered and continues

20 │ to suffer emotional distress and anguish, humiliation, substantial losses in salary/wages, bonuses,

21 │
22 │ advancement, opportunity for advancement, job benefits, and other employment benefits which

23 │ she would have received all to her damages in a sum within the jurisdiction of the Court to be

24 │ ascertained according to proof.

25 │     117.   Plaintiff is informed, believes, and based thereon, alleges that the outrageous

26 │ conduct of Defendants, and each of them, as alleged herein, was done with oppression and

27 │ malice by Plaintiff's supervisors and administrators, along with conscious disregard of Plaintiff's

28 │ rights, and were ratified by those other individuals who were managing agents of Defendants.

**Complaint for Damages & Injunctive Relief**

118.    These unlawful acts were further encouraged by Defendants and done with a conscious disregard for Plaintiff's rights and with the intent, design, and purpose of injuring Plaintiff.   The conduct of Defendants alleged hereinabove and below was done with malice, fraud or oppression, and in reckless disregard of DEZHAM's rights under California law.  As such, DEZHAM is entitled to punitive damages within the meaning of Civ. Code §3294.

## FOURTH CAUSE OF ACTION

**PHYSICAL & MENTAL DISABILITY/MEDICAL CONDITION DISCRIMINATION**

**In Violation of Public Policy and The Fair Employment and Housing Act**

**(As To All Defendants and DOES 1-10)**

119.    Plaintiff refers to all allegations contained in paragraphs 1-118, inclusive and by such reference incorporates the same herein as though fully realleged in detail.

120.    At all times herein mentioned, Government Code §§12940(a) and 12941 were in full force and effect and were binding on Defendants.  These sections require Defendants to refrain from discriminating against any employee because of their physical or mental disability or medical condition.

121.    After years of wholly above-satisfactory, competent and diligent work performance to the significant profit of the Defendants, DEZHAM was notified by Defendants that she was being terminated owing to DEZHAM's injuries.  These reasons were, in part, a pretext designed to conceal Defendants' practice of discriminating against DEZHAM on the basis of her physical or mental disability or medical condition which resulted from an on-the-job injury.

122.    Although DEZHAM was not offered any alternative positions for which she was qualified, employees without a physical or mental disability or medical condition and with less

experience than DEZHAM, upon information and belief, were retained or hired into in these alternative positions.

123.    DEZHAM believes and thereon alleges that her physical or mental disability or medical condition was a factor in Defendants' decision to terminate her.  Such discrimination was in violation of the public policy of the State of California as reflected in Government Code §§12940(a) and 12941 and resulted in damage and injury to DEZHAM as alleged herein.

124.    As a proximate result of Defendants' willful, knowing, and intentional discrimination against DEZHAM, she has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

125.    In light of Defendants' willful, malicious, knowing, and intentional discrimination against DEZHAM, DEZHAM seeks an award of punitive and exemplary damages in an amount according to proof.

126.    DEZHAM has incurred and continues to incur legal expenses, attorney fees and medical bills.  DEZHAM is presently unaware of the precise amount of said expenses, bills and fees and prays leave of court to amend this Complaint when said amounts are more fully known.

127.    As a direct result of Defendants' actions and failures to act, Defendants violated the provisions of the Fair Employment and Housing Act:

Government Code, §12921.

(a) The opportunity to seek, obtain and hold employment without discrimination because of * * * physical disability, mental disability, [or] medical condition * * * is hereby recognized as and declared to be a civil right.

128.    Defendants' failure to supervise, control, direct, manage, and counsel those agents throughout DEZHAM's employment ratified, condoned and/or encouraged the discriminatory behavior and enabled agents to believe that their conduct was appropriate.

129.    Defendants, and each of them, failed to offer counseling or comfort to Plaintiff and sent the unmistakable message to her coworkers that such conduct is appropriate in the workplace.

130.    Upon information and belief, Defendants have a systemic and wide-spread policy of discriminating against, retaliating against, and failing to older employees, minorities and the disabled.  By failing to stop the discrimination, harassment and retaliation, the Defendants ratified the harassing, discriminatory and retaliatory conduct which, in turn, directly caused a vicious cycle allowing Plaintiff's coworkers, supervisors, and other staff to act discriminatorily toward Plaintiff with impunity.

131.    Upon information and belief, DEZHAM was replaced by Defendants with someone not suffering from a mental, physical or medical disability or condition.

132.    The Fair Employment and Housing Act (hereinafter "FEHA"), codified in Government Code §§12900, *et seq.*, makes it unlawful for an employer to discriminate against an employee on the basis of the employee's physical or mental disability or medical condition.

133.    Further, California Government Code §12940 prohibits employers from discriminating against or harassing an employee in promotions, assignments, termination, term, condition or privilege of employment on the basis of physical or mental disability or medical condition.  California law further prohibits harassment of employees by any person and requires employers to take all reasonable steps to prevent harassment.  The law further provides for administrative fines and remedies including front pay, back pay, promotion, reinstatement, cease-and-desist orders, attorney's fees, costs, and damages for emotional distress.

134.    Defendants engaged in unlawful employment practices in violation of FEHA by failing to investigate Plaintiff's complaints, having and enforcing rules that are discriminatory on their face, and for promoting and adopting conduct that violates California's employment laws. In addition, Defendants had a policy of retaliation, and did retaliate, against employees that complained about unequal and discriminatory treatment in a direct effort to stifle such exercise of rights.

135.    Plaintiff submits that her physical and/or mental disability and/or medical condition was a motivating factor in the decision of Defendants to mistreat her, discriminate against her, allow her to be harassed, deny her equal access to opportunities to further her career, deny her the ability to fairly compete with her co-workers, further deny her opportunities extended to counterparts without disabilities or medical conditions, ultimately terminate her employment, and other discrimination against her, in violation of the FEHA.

136.    As a direct, foreseeable, and proximate result of the wrongful conduct of each Defendant as herein alleged, Plaintiff was harmed in mind and body, has suffered and continues to suffer emotional distress and anguish, humiliation, substantial losses in salary/wages, bonuses, advancement, opportunity for advancement, job benefits, and other employment benefits which she would have received all to her damages in a sum in excess of one million dollars and within the jurisdiction of the Court to be ascertained according to proof.

137.    Plaintiff is informed, believes, and based thereon, alleges that the outrageous conduct of Defendants, and each of them, as alleged herein, was done with oppression and malice by Plaintiff's supervisors and administrators, along with conscious disregard of Plaintiff's rights, and were ratified by those other individuals who were managing agents of Defendants.

138.    These unlawful acts were further encouraged by Defendants and done with a conscious disregard for Plaintiff's rights and with the intent, design, and purpose of injuring

Complaint for Damages & Injunctive Relief

Plaintiff.   The conduct of Defendants alleged hereinabove and below was done with malice, fraud or oppression, and in reckless disregard of DEZHAM's rights under California law.  As such, DEZHAM is entitled to punitive damages within the meaning of Civ. Code §3294.

## FIFTH CAUSE OF ACTION

### DISCRIMINATION BASED ON PARTICIPATION IN PROTECTED CONDUCT

(As To All Defendants and DOES 1-10)

139.   Plaintiff refers to all allegations contained in paragraphs 1-138, inclusive and by such reference incorporates the same herein as though fully realleged in detail.

140.   At all times herein mentioned, California law prohibited discrimination or mistreatment of employees by employers for employees having exercised their right to participate in protected conduct.

141.   DEZHAM participated in the following protected conduct: complained about her mistreatment, harassment and discrimination to Defendants and DFEH, and filed, prosecuted and received workers' compensation benefits under the Workers' Compensation Act.

141.   After years of wholly above-satisfactory, competent and diligent work performance to the significant profit of the Defendants, DEZHAM was notified by Defendants that she was being terminated owing to DEZHAM's injuries.  These reasons were, in part, a pretext designed to conceal Defendants' practice of discriminating against DEZHAM on the basis of her exercise of protected rights mentioned herein.

142.   DEZHAM believes and thereon alleges that her participation in such protected activity was a factor in Defendants' decision to terminate her.  Such discrimination was in violation of the public policy of the State of California as reflected in Government Code §§12940(a) and 12941 and resulted in damage and injury to DEZHAM as alleged herein.

143.    As a proximate result of Defendants' willful, knowing, and intentional discrimination against DEZHAM, she has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

144.    In light of Defendants' willful, malicious, knowing, and intentional discrimination against DEZHAM, DEZHAM seeks an award of punitive and exemplary damages in an amount according to proof.

145.    DEZHAM has incurred and continues to incur legal expenses, attorney fees and medical bills. DEZHAM is presently unaware of the precise amount of said expenses, bills and fees and prays leave of court to amend this Complaint when said amounts are more fully known.

146.    Defendants' failure to supervise, control, direct, manage, and counsel those agents throughout DEZHAM's employment ratified, condoned and/or encouraged the discriminatory behavior and enabled agents to believe that their conduct was appropriate.

147.    Defendants, and each of them, failed to offer counseling or comfort to Plaintiff and sent the unmistakable message to her coworkers that such conduct is appropriate in the workplace.

148.    Upon information and belief, Defendants have a systemic and wide-spread policy of discriminating against, retaliating against, and failing to older employees, minorities and the disabled. By failing to stop the discrimination, harassment and retaliation, the Defendants ratified the harassing, discriminatory and retaliatory conduct which, in turn, directly caused a vicious cycle allowing Plaintiff's coworkers, supervisors, and other staff to act discriminatorily toward Plaintiff with impunity.

149.    In addition, Defendants had a policy of retaliation, and did retaliate, against employees that participated in protected conduct in a direct effort to stifle such exercise of rights.

Smaili & Associates, P.C.

Complaint for Damages & Injunctive Relief

150.    Plaintiff submits that her participation in such protected activity was a motivating factor in the decision of Defendants to mistreat her, discriminate against her, allow her to be harassed, deny her equal access to opportunities to further her career, deny her the ability to fairly compete with her co-workers, further deny her opportunities extended to counterparts who did not exercise such protected rights, ultimately terminate her employment, and other discrimination against her, in violation of California law.

151.    As a direct, foreseeable, and proximate result of the wrongful conduct of each Defendant as herein alleged, Plaintiff was harmed in mind and body, has suffered and continues to suffer emotional distress and anguish, humiliation, substantial losses in salary/wages, bonuses, advancement, opportunity for advancement, job benefits, and other employment benefits which she would have received all to her damages in a sum within the jurisdiction of the Court to be ascertained according to proof.

152.    Plaintiff is informed, believes, and based thereon, alleges that the outrageous conduct of Defendants, and each of them, as alleged herein, was done with oppression and malice by Plaintiff's supervisors and administrators, along with conscious disregard of Plaintiff's rights, and were ratified by those other individuals who were managing agents of Defendants.

153.    These unlawful acts were further encouraged by Defendants and done with a conscious disregard for Plaintiff's rights and with the intent, design, and purpose of injuring Plaintiff.    The conduct of Defendants alleged hereinabove and below was done with malice, fraud or oppression, and in reckless disregard of DEZHAM's rights under California law.  As such, DEZHAM is entitled to punitive damages within the meaning of Civ. Code §3294.

## SIXTH CAUSE OF ACTION

## FAILURE TO PREVENT OR REMEDY DISCRIMINATION AND HARASSMENT

(As to All Defendants and DOES 1-10)

154.   Plaintiff refers to all allegations contained in paragraphs 1-153, inclusive and by such reference incorporates the same herein as though fully realleged in detail.

155.   During the course of employment, Defendants and Does 1-10, and each of them, failed to prevent or remedy discrimination, retaliation and harassment toward Plaintiff on the basis of her age, religion, national origin, disability, medical condition, and participation in protected conduct in violation of Government Code §12940(k).

156.   As a direct result of the wrongful conduct of Defendants, Plaintiff suffered, and continues to suffer, substantial losses in earnings and other benefits in an amount according to proof at the time trial, including special and general damages.

157.   As a direct, foreseeable, and proximate result of the wrongful conduct of each Defendant, Plaintiff has suffered and continues to suffer emotional distress and anguish, humiliation, substantial losses in salary, bonuses, job benefits, and other employment benefits which she would have received all to her damages in a sum within the jurisdiction of the Court to be ascertained according to proof.

158.   Plaintiff is informed, believes, and based thereon, alleges that the outrageous conduct of Defendants, and each of them, as alleged herein, was done with oppression and malice by Plaintiff's supervisors and managers, along with conscious disregard of Plaintiff's rights, and were ratified by those other individuals who were managing agents of Defendants.

159.   As a proximate result of the wrongful conduct of Defendants, and each of them, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish according to proof at the time of trial.

Small & Associates, P.C.

**Complaint for Damages & Injunctive Relief**

160.    These unlawful acts were further encouraged by Defendants and done with a conscious disregard for Plaintiff's rights and with the intent, design, and purpose of injuring Plaintiff.   The conduct of Defendants alleged hereinabove and below was done with malice, fraud or oppression, and in reckless disregard of DEZHAM's rights under California law.   As such, DEZHAM is entitled to punitive damages within the meaning of Civ. Code §3294.

161.    Plaintiff has also incurred and continues to incur attorneys' fees and legal expenses in an amount according to proof at the time of trial.

## SEVENTH CAUSE OF ACTION

## RETALIATION

### (As To All Defendants and DOES 1-10)

162.    Plaintiff refers to all allegations contained in paragraphs 1-161, inclusive and by such reference incorporates the same herein as though fully realleged in detail.

163.    Title 2, California Code of Regulations, Section 7287.8 defines unlawful retaliation as follows: "It is unlawful for an employer * * * to reduce * * *, fail to give equal consideration in making employment decisions, * * * adversely affect working conditions or otherwise deny employment benefit to an individual because that individual has opposed practices prohibited by the Act or has filed a complaint, testifies, assisted or participated in any manner in an investigation, proceeding, or hearing conducted by the Commission or their staffs."

164.    During the course of employment, Defendants and Does 1-10, and each of them, retaliated against Plaintiff in direct response to her internal informal and formal complaints, filing of charges with DFEH, filing her claims under the Workers' Compensation Act, voicing her concerns, and the like.

165.    Defendants were motivated to discriminate against Plaintiff on grounds that violate the Act in retaliation for protesting discrimination and harassment.

Complaint for Damages & Injunctive Relief

Smaili & Associates, P.C.

166.     Defendants unlawfully retaliated against Plaintiff after she engaged in protected activity in, without limitation, protesting her treatment, complaining to supervisors and others, voicing her concerns, rejecting discrimination, harassment and derogatory comments, and filing a formal charge with DFEH in a reasonable and good faith belief that Defendants' and others' conduct violated FEHA, and was thus subjected to adverse employment actions when Defendant retaliated against her which resulted in termination.  In addition, Defendants failed to investigate her complaints and claims, failed to prevent the harassment and discrimination, prevented her from receiving equal treatment in accord with that treatment received by her counterparts and threatened her employment.  Defendants' actions constituted adverse employment decisions.

167.     As a direct result of the wrongful conduct of Defendants, Plaintiff suffered, and continues to suffer, substantial losses in earnings and other benefits in an amount according to proof at the time of trial, including special and general damages.

168.     As a direct, foreseeable, and proximate result of the wrongful conduct of each Defendant, Plaintiff has suffered and continues to suffer emotional distress and anguish, humiliation, substantial losses in salary, bonuses, job benefits, and other employment benefits which she would have received all to her damages in a sum within the jurisdiction of the Court to be ascertained according to proof.

169.     Plaintiff is informed, believes, and based thereon, alleges that the outrageous conduct of Defendants, and each of them, as alleged herein, was done with oppression and malice by Plaintiff's supervisors and administrators, along with conscious disregard of Plaintiff's rights, and were ratified by those other individuals who were managing agents of Defendants.

170.     These unlawful acts were further encouraged by Defendants and done with a conscious disregard for Plaintiff's rights and with the intent, design, and purpose of injuring Plaintiff.  The conduct of Defendants alleged hereinabove and below was done with malice,

fraud or oppression, and in reckless disregard of DEZHAM's rights under California law.  As

such, DEZHAM is entitled to punitive damages within the meaning of Civ. Code §3294.

171.    DEZHAM is informed and believes and thereon alleges that a consequence of her

complaining and reporting the above-described concerns, perceived violations of the law, rules

and regulations, as well as her concern relative to her health and well-being, Defendants took

retaliatory actions against DEZHAM by not failing to accommodate her, failing to maintain her

employment, failing to participate in a good faith interactive process, failing to prevent and/or

remedy discrimination and harassment, failing to protect her form the same, ultimately

terminating her employment and then consistently refusing to rehire or reinstate her.  This

conduct constitutes, at the least, a violation of Labor Code §6310 which embodies a public

policy against retaliatory terminations.

172.    Defendants further unlawfully retaliated against DEZHAM after she engaged in

protected activity in, without limitation, protesting and complaining to managers, voicing her

concerns, and being injured on the job which to Defendants meant that DEZHAM would file for,

and she did file for, workers' compensation benefits.

173.    Plaintiff has also incurred and continues to incur attorneys' fees and legal

expenses in an amount according to proof at the time of trial.

## EIGHTH CAUSE OF ACTION

### HARASSMENT

(As to all Defendants and DOES 1-10)

174.    Plaintiff refers to all allegations contained in paragraphs 1-173, inclusive and by

such reference incorporates the same herein as though fully realleged in detail.

Smaili & Associates, P.C.

175. Government Code §12940(j) provides that it is unlawful for an employer to harass an employee on the basis of the employee's race, religious creed, national origin, physical disability, mental disability, medical condition, or age.

176. During the course of Plaintiff's employment, Defendants created and allowed to exist a hostile environment and discriminated against and harassed Plaintiff on the basis of her race, religious creed, national origin, physical disability, mental disability, medical condition, and age in violation of Government Code §12940(j).

177. As a direct result of such harassment, Plaintiff suffered, and continues to suffer, substantial losses in earnings and other benefits in an amount according to proof at the time trial, including special and general damages.

178. Plaintiff is informed, believes, and based thereon, alleges that the outrageous conduct of Defendants, and each of them, as alleged herein, was done with oppression and malice by Plaintiff's supervisors and managers, along with conscious disregard of Plaintiff's rights, and were ratified by those other individuals who were managing agents of Defendants.

179. These unlawful acts were further encouraged by Defendants and done with a conscious disregard for Plaintiff's rights and with the intent, design, and purpose of injuring Plaintiff. By reason thereof, Plaintiff is entitled to punitive or exemplary damages against the individual Defendants, for their acts and/or failures to act, as alleged herein in an amount to be determined at time of trial.

180. Plaintiff has also incurred and continues to incur attorneys' fees and legal expenses in an amount according to proof at the time of trial.

### NINTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(As To All Defendants and DOES 1-10)

181.   Plaintiff refers to all allegations contained in paragraphs 1-180, inclusive and by such reference incorporates the same herein as though fully realleged in detail.

182.   Defendants, and each of them, acted intentionally and recklessly by discriminating against and harassing Plaintiff because of her race, religious creed, national origin, physical disability, mental disability, medical condition, and age, and, in doing so, subjected Plaintiff to severe emotional distress.

183.   Defendants acted outrageously with the intent of causing or with reckless disregard of the probability of causing severe emotional distress to Plaintiff by acting and failing to act as alleged herein.

184.   The conduct of Defendants, and each of them, as set forth above, was so extreme and outrageous that it exceeded the boundaries of a decent society and lies well outside of the compensation bargain.

185.   Said conduct was intended to cause severe emotional distress, or was done in conscious disregard of the probability of causing severe emotional distress. This conduct is also in violation of public policy.

186.   As a direct result of Defendants intentional acts, Plaintiff has suffered and continues to suffer extreme emotional anguish, humiliation, embarrassment, mental suffering, and tension all to Plaintiff's detriment in a sum within the jurisdiction of this Court to be ascertained according to proof. Specifically, DEZHAM avers that she was constantly undermined, harassed and discriminated against specifically due to her disability, race, national origin, age and participation in protected activity. As a result, DEZHAM has suffered, and

Esmaili & Associates, P.C.

**Complaint for Damages & Injunctive Relief**

1   continues to suffer, severe emotional and mental anguish, stress, loss of sleep/insomnia, hernia,

2   crying spells, social anxiety, headaches, fever, back pain, body aches, panic attacks, generalized

3   anxiety, diarrhea, depression, lack of appetite, nightmares, and the like.  DEZHAM further

4   suffers from Reflex Sympathetic Dystrophy Syndrome (RSD) and Chronic/Complex Regional

5   Pain Syndrome.  In addition, DEZHAM suffers from pain in the right foot and right knee directly

6   due to overcompensating for her injury and pain on her left side/foot (antalgic gait), which has

7   exacerbated her mental and emotional suffering.

8

9        187.    As a direct, foreseeable, and proximate result of the conduct of each Defendant,

10   Plaintiff has suffered and continues to suffer substantial losses in salary, career losses, bonuses,

11   job benefits, and other employment benefits which she would have received all to her damages in

12   a sum within the jurisdiction of the Court to be ascertained according to proof.

13        188.    As a direct result of the outrageous conduct of Defendants, and each of them, as

14   alleged herein, Plaintiff is entitled to punitive or exemplary damages against said Defendants,

15   and each of them, for their acts as alleged herein in an amount to be determined at time of trial.

16

17                          **TENTH CAUSE OF ACTION**

18        **REFUSAL TO ACCOMMODATE DISABILITY/MEDICAL CONDITION**

19               **In Violation of The Fair Employment and Housing Act**

20                     (As To All Defendants and DOES 1-10)

21        189.    Plaintiff refers to all allegations contained in paragraphs 1-188, inclusive and by

22   such reference incorporates the same herein as though fully realleged in detail.

23        190.    FEHA prohibits an employer's failure to reasonably accommodate a recognized

24   disability.

25        191.    Reasonable accommodation of Plaintiff's actual or perceived mental or medical

26   condition would not have constituted any undue hardship on Defendants.

27

28

192.    Plaintiff is perceived to have medical and physical disabilities arising out of her psychiatrist's diagnosis of depression and emotional/mental stress and anxiety, as well as the physical disability (toe, resulting hernia and back pain), along with all of the physical and mental disabilities and medical conditions that have been set forth herein above and below, which were communicated to Defendants.

193.    Throughout the relevant timeframe alleged in this Complaint, Defendants refused to reasonably accommodate Plaintiff's medical needs based on her medical conditions.

194.    At all times mentioned herein, Plaintiff was willing and able to perform the duties and functions of her position if such reasonable accommodation had been made by Defendants.

195.    At no time would the performance of the functions of the employment position, with a reasonable accommodation for Plaintiff's disabilities have been a danger to Plaintiff or any other person's health or safety.

196.    Plaintiff submits that her disability and/or medical condition was a motivating factor in the decision of Defendants to mistreat her, discriminate against her, fail to engage in a good faith interactive process, fail to reasonably accommodate her disability, fail to return her to work, and deny her opportunities extended to her counterparts, and other discrimination against her, including ultimate termination and failure to reinstate, interview and/or hire, in violation of FEHA.

197.    As a direct, foreseeable, and proximate result of the wrongful conduct of Defendants as herein alleged, Plaintiff has suffered and continues to suffer emotional distress and anguish, humiliation, medical expenses, anxiety, losses in salary/wages, advancement, opportunity for advancement, job benefits, additional amounts of money and other employment benefits which Plaintiff would have received had she not been subjected to unlawful conduct, all

to her damages in a sum within the jurisdiction of the Court to be ascertained according to proof at trial.

198.  As a further proximate result of Defendants' discriminatory actions against Plaintiff, as alleged hereinabove and below, Plaintiff has been harmed in that she has suffered the intangible loss of such employment-related opportunities as experience from the position from which she was terminated and lack of opportunities to perform duties and tasks within her expertise, without limitation.  As a result of such discrimination and consequent harm, Plaintiff has suffered damages in an amount according to proof at trial.

199.  As a further proximate result of Defendants' discriminatory actions against Plaintiff, as alleged hereinabove and below, Plaintiff has been harmed in mind and body.

200.  The outrageous conduct of Defendants, and each of them, as alleged herein, was done with oppression and malice by Defendants and their agents, along with conscious disregard of Plaintiff's rights, and were ratified by those other individuals who were managing agents of Plaintiff.

201.  The conduct of Defendants alleged hereinabove and below was done with malice, fraud or oppression, and in reckless disregard of Plaintiff's rights under FEHA.

202.  These unlawful acts were further encouraged by Defendants and done with a conscious disregard for Plaintiff's rights and with the intent, design, and purpose of injuring Plaintiff.

203.  Plaintiff has also incurred and continues to incur medical expenses and costs, attorneys' fees and legal expenses in an amount according to proof at the time of trial.

## ELEVENTH CAUSE OF ACTION

### VIOLATION OF ARTICLE I, §8 OF THE CALIFORNIA CONSTITUTION

(As To All Defendants and DOES 1-10)

204.    Plaintiff refers to all allegations contained in paragraphs 1-203, inclusive and by such reference incorporates the same herein as though fully realleged in detail.

205.    In perpetuating the above-described conduct and actions, as well as failures to act, Defendants, and each of them and/or their agents/employees, engaged in unlawful discrimination, harassment and retaliation based on Plaintiff's race, religion, national origin, disability, medical condition, participation in protected activity, and other protected opinion or speech.

206.    Defendants' actions violated Article I, §8 of the California Constitution, which prohibits discrimination in employment on these bases.

207.    As a direct and proximate result of the wrongful conduct of Defendants, Plaintiff suffered, and continues to suffer, severe physical and mental distress, depression, losses in earnings and other benefits, anguish, humiliation, medical expenses, lack of opportunities and advancement, and anxiety, in a sum within the jurisdiction of the Court to be ascertained according to proof.

208.    Plaintiff is informed, believes, and based thereon, alleges that the outrageous conduct of Defendants, and each of them, as alleged herein, was done with oppression and malice along with conscious disregard of Plaintiff's rights, all of which were ratified by those other individuals who were managing agents of Defendants.

209.    These unlawful acts were further encouraged by Defendants and were done with a conscious disregard for Plaintiff's rights and with the intent, design, and purpose of injuring Plaintiff.  By reason thereof, Plaintiff is entitled to punitive or exemplary damages against

1  Defendants, for their acts and/or failures to act, as alleged herein in an amount to be determined

2  at time of trial.

3      210.    Plaintiff has also incurred and continues to incur medical costs and expenses,

4  attorneys' fees and legal expenses in an amount according to proof at the time of trial.

5  <center>**TWELFTH CAUSE OF ACTION**</center>

6

7  <center>**FAILURE/REFUSAL TO HIRE/REINSTATE**</center>

8  <center>**(In Violation of FEHA and Public Policy)**</center>

9  <center>(As Against All Defendants and DOES 1-10)</center>

10      211.    Plaintiff refers to all allegations contained in paragraphs 1-210, inclusive and by

11

12  such reference incorporates the same herein as though fully realleged in detail.

13      212.    After years of wholly above-satisfactory, competent and diligent work

14  performance to the significant profit of the Defendants, DEZHAM was notified by Defendants

15  that she was being terminated owing to DEZHAM's injuries.

16      213.    After her termination, DEZHAM was released back to work by her doctor and

17

18  repeatedly applied for the same sales position that she had for approximately 15 years.

19      214.    At all times herein mentioned, Government Code §§12940(a) and 12941 were in

20  full force and effect and were binding on Defendants.  These sections require Defendants to

21  refrain from discriminating against any employee by failing to hire a qualified candidate for

22  employment based on age, race, national origin, medical condition, disability or participation in

23  protected conduct.

24      215.    Defendants failed and/or refused to hire Plaintiff, a well-qualified candidate, due

25  to Plaintiff's age, race, national origin, medical condition, disability or participation in protected

26  conduct.

27

28

216.    As a proximate result of Defendants' willful, knowing, and intentional discrimination against DEZHAM, she has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

217.    In light of Defendants' willful, malicious, knowing, and intentional discrimination against DEZHAM, DEZHAM seeks an award of punitive and exemplary damages in an amount according to proof.

218.    DEZHAM has incurred and continues to incur legal expenses, attorney fees and medical bills.  DEZHAM is presently unaware of the precise amount of said expenses, bills and fees and prays leave of court to amend this Complaint when said amounts are more fully known.

219.    Upon information and belief, Defendants have a systemic and wide-spread policy of discriminating against applicants for employment with disabilities, medical conditions, older individuals, members of minority groups, former employees who exercised their protected rights, and the like.  In addition, Defendant's agents asked impermissible questions of Plaintiff at her interview which related to her disabilities, pain, physical abilities, and the like.

220.    Plaintiff submits that her immutable characteristics, disabilities and medical conditions, as set forth hereinabove, were motivating factors in the decision of Defendants to refuse/fail to hire or reinstate her and discriminate against her and deny her equal access to opportunities for employment and to further her career, in violation of the FEHA.

221.    As a direct, foreseeable, and proximate result of the wrongful conduct of each Defendant as herein alleged, Plaintiff was harmed in mind and body, has suffered and continues to suffer emotional distress and anguish, humiliation, substantial losses in salary/wages, bonuses, advancement, opportunity for advancement, job benefits, and other employment benefits which

1    she would have received all to her damages in a sum within the jurisdiction of the Court to be

2    ascertained according to proof.

3        222.    Plaintiff is informed, believes, and based thereon, alleges that the outrageous

4    conduct of Defendants, and each of them, as alleged herein, was done with oppression and

5    malice by Defendants, along with conscious disregard of Plaintiff's rights, and were ratified by

6

7    those other individuals who were managing agents and interviewers of Defendants.

8        223.    These unlawful acts were further encouraged by Defendants and done with a

9    conscious disregard for Plaintiff's rights and with the intent, design, and purpose of injuring

10   Plaintiff.    The conduct of Defendants alleged hereinabove and below was done with malice,

11   fraud or oppression, and in reckless disregard of DEZHAM's rights under California law.  As

12

13   such, DEZHAM is entitled to punitive damages within the meaning of Civ. Code §3294.

14                        **THIRTEENTH CAUSE OF ACTION**

15                           **WRONGFUL TERMINATION**

16                   **(In Violation of FEHA and Public Policy)**

17

18                        (As To All Defendant and DOES 1-10)

19       224.    Plaintiff refers to all allegations contained in paragraphs 1-223, inclusive and by

20   such reference incorporates the same herein as though fully realleged in detail.

21       226.    Plaintiff informed Defendants that she suffered an injury within the course and

22   scope of her employment and Defendants knew that Plaintiff caused to be filed a workers'

23

24   compensation claim under the Workers' Compensation Act for benefits.

25       227.    At all times herein mentioned, California law prohibited employers from

26   retaliating against, discriminating against or terminating employees that the employer believes

27   were injured within the course and scope of employment and who have filed for benefits under

28   the Workers' Compensation Act.

228.    Plaintiff alleges that Defendants terminated her employment because she was injured within the course and scope of her employment and for filing for benefits under the Workers' Compensation Act.

229.    At all times herein mentioned, California law prohibited employers from retaliating against, discriminating against or terminating employees due to physical or mental disabilities of employees.

230.    At all times herein mentioned, California law prohibited employers from retaliating against, discriminating against, or terminating employees due to medical conditions suffered.

231.    At all times herein mentioned, California law prohibited employers from retaliating against, discriminating against, or terminating employees due to their participation in protected conduct as set forth hereinabove and/or exercising rights protected under the law.

232.    Defendants wrongfully terminated Plaintiff in violation of a substantial and fundamental public policy in that a determining and motivating factor in Defendants' decision to terminate DEZHAM's employment was the desire to retaliate against her: (i) because she claimed to have been injured within the course and scope of her employment with Defendants, (ii) because she filed a workers' compensation claim for such injuries, (iii) because she requested reasonable accommodations, (iv) because she inquired as to a good faith interactive process aimed at reuniting her with her job, (v) because she complained internally and to DFEH relative to what she reasonably and in good faith believed to be discrimination, harassment and retaliation at the hands of her employer and her employer's agents and thus having exercised her rights to partake in protected activity, (vi) because she suffered from a physical and mental disability, as well as a medical condition which arose from the on-the-job injury while

performing tasks for the financial benefit of Defendants, and (vii) because of her age, race, religion, and national origin, without limitation.

233.   After months of wholly satisfactory, competent and diligent performance to the profit of the Defendants, and while on medical leave, Plaintiff was notified by Defendants that she was being terminated owing to her medical disability and her doctor's failure to release her back to work.  However, these reasons, although themselves wrongful and violate the law, were a pretext designed to conceal Defendants' practice of discriminating against Plaintiff on the basis of her race, religion, national origin, participation in protected activity, disability, medical condition, her formal and informal concerns and complaints, and/or her filing of a claim under the Workers' Compensation Act.

234.   DEZHAM believes and thereon alleges that these factors made up Defendants' decision to terminate her employment, or played an important and integral role in her termination.  Such discrimination was in violation of the public policy of the State of California and resulted in damage and injury to Plaintiff as alleged herein. This conduct constitutes, at the least, a violation of Labor Code §6310 which embodies a public policy against retaliatory terminations.

235.   Defendant wrongfully terminated Plaintiff's employment in violation of a substantial and fundamental public policy, and such conduct was also in violation of the public policy of the State of California and resulted in damage and injury to Plaintiff as alleged herein.

236.   In addition, Defendants' conduct violated FEHA in that Defendants' decision to terminate Plaintiff's employment  was based on Plaintiff's race, religion, national origin, age, disability, participation in protected activities and/or medical condition.

237.   As a proximate result of Defendants' willful, knowing, and intentional discrimination and retaliation against Plaintiff, she has sustained and continues to sustain

Smaili & Associates, P.C.

Complaint for Damages & Injunctive Relief

substantial losses in his earnings and other employment benefits and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

238.    In light of Defendants' willful, knowing, and intentional discrimination against Plaintiff which resulted in her wrongful termination, Plaintiff seeks an award of punitive and exemplary damages in an amount according to proof.

239.    Plaintiff has incurred and continues to incur legal expenses, attorney fees and medical bills.  Plaintiff is presently unaware of the precise amount of said expenses and fees and prays leave of court to amend this Complaint when said amounts are more fully known.

<div align="center">

**FOURTEENTH CAUSE OF ACTION**

**WAITING TIME PENALTIES-VACATION PAY**

**(In Violation of Labor Code §§203, 227.3)**

(As To All Defendant and DOES 1-10)

</div>

240.    Plaintiff refers to all allegations contained in paragraphs 1-239, inclusive and by such reference incorporates the same herein as though fully realleged in detail.

241.    At the time of termination, Defendants owed Plaintiff at least 17 days of earned, accrued and unused vacation pay.

242.    Under California law, specifically Labor Code §203 mandates an assessment of a penalty against the employer for willful failure to pay wages earned.  Vacation time is considered wages, and under Labor Code §227.3, whenever an employment relationship ends for any reason whatsoever and the employee has not used all of her earned and accrued vacation, the employer must pay the employee at her final rate of pay for all such accrued and unused vacation.  Notwithstanding repeated requests by Plaintiff and her counsel, both verbal and written, Defendant has failed to date to pay accrued and unused vacation pay rightfully owed to Plaintiff.

243.   Defendant is therefore subject to waiting time penalties for the maximum of 30 days' wages and for the full amount owed for the underlying vacation days that remain unpaid.

244.   Defendant lacked any good faith in failing or refusing to pay Plaintiff her accrued and unused vacation pay.

## FIFTEENTH CAUSE OF ACTION

### FAILURE TO COMPLY WITH LABOR CODE §226(b)

(As To All Defendants and DOES 1-10)

245.   Plaintiff refers to all allegations contained in paragraphs 1-244, inclusive and by such reference incorporates the same herein as though fully realleged in detail.

246.   Defendants failed to provide inspection rights or copies of DEZHAM's employment and other records after they were duly demanded by Plaintiff and her counsel on numerous occasions after her termination pursuant to Labor Code §226(b) and (c).

247.   As such, Defendant is subject to penalty under Labor Code §226(e), (f) and (h), as well as to injunctive relief, costs and reasonable attorneys' fees.

## SIXTEENTH CAUSE OF ACTION

### UNFAIR COMPETITION

(As To All Defendants and DOES 1-10)

248.   Plaintiff refers to all allegations contained in paragraphs 1-247, inclusive and by such reference incorporates the same herein as though fully realleged in detail.

249.   DEZHAM seeks equitable relief for restitution and to enjoin Defendants from engaging in the practices alleged in this Complaint and to require Defendants to pay all monies wrongfully withheld by Defendants' unfair business practices and unlawful competition.

250.    At all times relevant hereto, California Business and Professions Code provides, in relevant part, that "unfair competition shall mean and include any unlawful, unfair, or fraudulent business act or practice * * *."

251.    Defendants, and each of the, are "persons" as defined under Business and Professional Code §17021.  Each of the directors, officers, and/or agents of Defendants, and each of them, are equally responsible for the acts of the other directors, officers, employees and/or agents as set forth in the Business and Professions Code §17095.  Defendant Macy's is self-insured for any claims arising under California's Workers' Compensation Act and thus has a duty to act in good faith in approving or denying medical treatment to injured employees.

252.    Plaintiff has suffered injury in fact and has lost money as a result of the unfair competition of Defendants.

253.    DEZHAM brings this action within the four year statute of limitations under §17208 of the California Business and Professions Code.

254.    Defendants, and each of them, engaged in unlawful and unfair business practices by failing to pay proper and timely wage and failing to approve medically indicated treatments and procedures, discriminating against employees and prospective employees on the basis of their exercise of protected rights, their age, religion, national origin, disabilities, medical conditions and the like.  Defendants gained a competitive advantage in the marketplace by failing to timely pay lawful wages that were required of any other legitimate business in California, and for unlawfully discriminating, harassing and retaliating against Plaintiff.

255.    Upon information and belief, DEZHAM alleges that Defendants engaged in the acts and omissions heretofore alleged for the purpose of profiting from lower labor costs, including lower workers' compensation premium costs and expenses, and by obtaining an unlawful or unfair advantage in the California retail sales market, all in a scheme to engage in

Smaili & Associates, P.C.

Complaint for Damages & Injunctive Relief

unfair competition, at the expense of Plaintiff and to the detriment of public policy for the lawful employment and treatment of workers.  Specifically, but without limitation, Defendant Macy's Corporate Services, Inc. conspired with Defendants Macy's West Stores, Inc. and Macy's Retail Holdings, Inc. to reduce the costs of treatment to its disabled and injured employees seeking workers' compensation benefits by denying essential and medically indicated treatments, and especially those recommended by DEZHAM's physicians as set forth hereinabove.  Defendants' failure to approve or authorize recommended and indicated medical treatments and procedures directly resulted in increased pain and suffering, loss of income, loss of use of limbs, increased depression and mental/emotional suffering, an increase in her disability, and the ultimate loss of Plaintiff's employment.

256.    As a direct and proximate result of these acts and omissions, Defendants, and each of them, were able to unfairly compete in the State of California as retail establishments in violation of the Labor Code and the Business and Professions Code.  DEZHAM seeks restitution of all unpaid vacation time and waiting time penalties, as well as reinstatement, back pay, compensation for pain and suffering, emotional and mental distress, and all costs and expenses. In addition to reinstatement, restitution and restoration of all monies owed to DEZHAM, Plaintiff seeks to enforce any and all applicable equitable remedies.

## REQUEST FOR INJUNCTIVEVE RELIEF IN THE FORM OF PRELIMINARY AND PERMANENT INJUNCTION

257.    Based on the foregoing allegations, Plaintiff submits that unless Defendants are restrained by a preliminary and permanent injunction from this Court at the earliest possible time, the potential for injury to other employees, and therefore to the general public at large, including the strong public interest in ensuring that employers provide a discrimination and harassment-free workplace, and that employers operate within the framework of the law, will

1    exponentially increase, and additional employees with similar races, ages, religions, disabilities

2    and medical conditions will be subjected to discrimination and harassment based on their

3    immutable characteristics.

4    Therefore, Plaintiff requests the following injunctive relief:

5    A.    Reinstatement of her employment and all of her duties, opportunities,

6                authority, assignments, seniority, good standing, with credit for the time

7                she has been terminated, including all wages, benefits, vacation days, sick

8                days utilized as a result of the disabilities and injuries be reinstated, and

9                the like;

10

11   B.    An order requiring Macy's, its supervisors and administrators, its

12                human resources department, and their workers' compensation carriers

13                and insurers, without limitation, to perform their duties within the spirit

14                and requirements of California law, and to ensure that conflicts of interest

15                are avoided by the appointment of an independent special master with

16                medical experience and training tasked with making good faith

17                determinations as to whether a certain medical treatment recommended by

18                a physician should or should not be authorized;

19

20

21   C.    An order that Macy's promulgate and strictly enforce protections for

22                minority employee and especially those that partake in protected conduct,

23                by mandating and undertaking sensitivity training for its entire workforce

24                relative to a zero-tolerance policy of non-discrimination, harassment

25                and/or retaliation against any of its own employees who participates in

26                protected conduct as well as training reflecting and fostering mutual

27                respect and understanding for all individuals notwithstanding their age,

28

Smaili & Associates, P.C.

**Complaint for Damages & Injunctive Relief**

religion, national origin, medical condition or disability; and

258.    It is therefore axiomatic that failure to intervene would violate the great public policy principles of judicial economy and the just, speedy and comprehensive resolution of civil actions. Unless this Honorable Court intervenes, the result would leave Plaintiff with no adequate remedy at law and it would cause Plaintiff great and irreparable harm.  Plaintiff thus, has no plain, speedy, or adequate remedy at law because Defendants' actions are pervasive and it will be impossible for Plaintiff to determine the precise amount or nature of damages or injury which she will suffer if Defendants' conduct is not restrained as Plaintiff would be forced to institute multiple suits to obtain appropriate and adequate remedies and damages.

**Complaint for Damages & Injunctive Relief**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. For general damages in an amount to be determined at trial;

2. For special damages in an amount to be determined at trial;

3. For punitive damages in an amount appropriate to punish Defendants and deter them and others from engaging in similar misconduct in the future;

4. For mental distress and emotional harm;

5. For a permanent injunction prohibiting Defendants from discriminating against, harassing or retaliating against other similarly situated employees, especially those participating in protected conduct and speech, and other conduct that would be in violation of FEHA;

6. For costs of suit herein, and reasonable costs, including expert witness fees, pursuant to Govt. Code §12965(b);

7. For reasonable attorney's fees as allowed by statute, Govt. Code §12965(b);

8. For pre-judgment and post-judgment interest as available by law;

9. For past and future economic losses, future medical care and therapy, emotional distress, and mental anguish; and

10. For such other and further relief as the Court may deem just and proper.

Dated: October 17, 2013                 SMAILI & ASSOCIATES, P.C.

                                        By: _____
                                        Jihad M. Smaili, Esq.
                                        Attorney for Plaintiff Hourvash Dezham

Complaint for Damages & Injunctive Relief

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____ David O. Carter _____ and the assigned Magistrate Judge is _____ Robert N. Block _____.

The case number on all documents filed with the Court should read as follows:

### SACV13-01864 DOC (RNBx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____ November 27, 2013 _____                    By _____ M. Barr _____
Date                                                    Deputy Clerk

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

☐ **Western Division**
312 N. Spring Street, G-8
Los Angeles, CA 90012

☒ **Southern Division**
411 West Fourth St., Ste 1053
Santa Ana, CA 92701

☐ **Eastern Division**
3470 Twelfth Street, Room 134
Riverside, CA 92501

**Failure to file at the proper location will result in your documents being returned to you.**

---

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| Hourvash Dezham | Macy's West Stores, Inc., Macy's Retail Holdings, Inc. and Macy's Corporate Services, Inc. |

| (b) County of Residence of First Listed Plaintiff   Orange | County of Residence of First Listed Defendant   Ohio |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |

| (c) Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. | Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. |
|---|---|
| Jihad Smaili<br>600 West Santa Ana Blvd., Suite 202<br>Santa Ana, CA  92701<br>(714) 547-4700 | Shirley D. Deutsch, Schwartz & Deutsch, LLP<br>300 South Grand Avenue, Suite 3900<br>Los Angeles, CA 90071<br>(213) 236-9400 |

## II. BASIS OF JURISDICTION (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 3. Federal Question (U.S. Government Not a Party)

☒ 2. U.S. Government Defendant

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (Place an X in one box only.)

☐ 1. Original Proceeding
☒ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

## V. REQUESTED IN COMPLAINT: JURY DEMAND: ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

CLASS ACTION under F.R.Cv.P. 23: ☐ Yes ☐ No   ☐ MONEY DEMANDED IN COMPLAINT: $

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
42 U.S.C. sections 1332, 1441 and 1446

## VII. NATURE OF SUIT (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☒ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influ- enced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Com- modities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury- Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| | **REAL PROPERTY** | ☐ 365 Personal Injury- Product Liability | ☒ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 220 Foreclosure | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities- Employment | ☐ 751 Family and Medical Leave Act | |
| | ☐ 230 Rent Lease & Ejectment | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

| FOR OFFICE USE ONLY: | Case Number: | **SACV13-01864 DOC (RNBx)** |
|---|---|---|

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned.  This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| ☒ Yes  ☐ No | ☐ Los Angeles | | Western |
| If "no," go to Question B.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | | Western |
| | ☒ Orange | | Southern |
| | ☐ Riverside or San Bernardino | | Eastern |

| Question B:  Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| ☐ Yes  ☒ No | A PLAINTIFF?  Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT?  Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| If "no," go to Question C.  If "yes," check the box that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Los Angeles | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C:  Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside. | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of defendants reside. | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ |
| Indicate the location in which a majority of claims arose. | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ |

**C.1.  Is either of the following true?  If so, check the one that applies:**

☒ 2 or more answers in Column C

☐ only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D, below.

If none applies, answer question C2 to the right. ➡

**C.2.  Is either of the following true?  If so, check the one that applies:**

☐ 2 or more answers in Column D

☐ only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D, below.

If none applies, go to the box below. ⬇

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D:  Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | Southern Division |

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court** and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s):

**IX(b). RELATED CASES:** Have any cases been previously filed **in this court** that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s):

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):** _Shirley Dent_          DATE: 11-26-13

Ix(e.

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |