O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| HOURVASH DEZHAM, | **Case No.: SACV 13-1864-DOC (RNBx)** |
| Plaintiff, | |
| vs. | |
| MACY'S WEST STORES, INC., et al., | **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT [69] AND GRANTING MOTION FOR SUMMARY JUDGMENT [81]** |
| Defendants. | |

Before the Court are the Motion for Summary Judgment filed by Macy's West Stores, Inc. (Dkt. 69) and the Motion for Summary Judgment filed by Macy's Retail Holdings, Inc. and Macy's Corporate Services, Inc. (Dkt. 81).

## I.    BACKGROUND

### A.  Ms. Dezham's Employment with Macy's

In 1997, Plaintiff Hourvash Dezham began working as a sales associate in Macy's intimate apparel department. Macy West Stores, Inc.'s Statement of Uncontroverted Material Facts and Conclusions of Law ("Macy's UF") 8. Ms. Dezham started working at the Valley

Fair location but later transferred to the South Coast Plaza location in Costa Mesa, California. Macy's UF 9. On July 9, 2010, Ms. Dezham injured her foot in a fall at work. Macy's UF 13-14. Afterward, Macy's filed a workers' compensation claim on behalf of Ms. Dezham and she was placed on a leave of absence at the request of her physician. Macy's UF 16.

At that time, Macy's had a Workers' Compensation Return to Work Policy, which stated as follows:

> Macy's policy is to comply with the American With Disabilities Act, as amended ("ADA"). Macy's will ensure compliance with the ADA by entering into the interactive dialogue with employees who have work related injuries/illnesses by doing one or more of the following: 1.) attempt to provide a reasonable accommodation(s) to enable the employee to return to his/her same job; 2.) reassign the employee to an open available equivalent job if his/her medical restrictions prevent him/her from returning to his/her same job or if his/her job has been filled as a result of an undue hardship; or 3.) if an equivalent position is not available, reassign the employee to a non-equivalent job that meets his/her medical restrictions, either with or without an accommodation, pay and benefits commensurate with the non equivalent job. A reasonable accommodation enables a disabled employee to perform the essential functions of his/her job or any other job for which he/she is qualified. An employee is able to return to his/her regular job if he/she is able to perform the essential functions of the job, with or without reasonable accommodations.

> If no accommodation is possible and if the employee is unable to perform the essential functions of his/her job, Macy's will determine whether the employee can be given a light duty job. A light duty job is a job that is not a bona fide budgeted open position, but is one that has been created solely for the purpose of allowing an employee with a work incurred injury/illness to temporarily return to work. If the employee needs a light duty job, the length of this assignment will not exceed 90 days on a per claim basis. (The 90 day period is determined by counting calendar days from the date the employee begins the light duty.)

> If restrictions require an employee to work a reduced hour or intermittent schedule, the hours not worked will run concurrently with FMLA** (if the employee is eligible) and any other applicable statutory leave law.** If medical restrictions include working a reduced hour schedule or to work intermittently, and the employee is not FMLA eligible, then working a reduced schedule or intermittently as light duty can not last longer than 90 days. At the conclusion of the 90 day period, Macy's will again conduct the interactive dialogue with the employee to determine whether the medical restrictions have changed to allow the employee to transition back to either his/her original position or an equivalent bona fide, open budgeted job for which he/she is qualified, or if no equivalent job is available, another job for which he/she is qualified, pay and benefits commensurate with that other job. Macy's must also determine whether intermittent or reduced schedule leave is available in the employee's same position under the FMLA, equivalent state leave law or the ADA. Restrictions limiting the number of hours worked can not be accommodated in light duty positions for salaried executives who are ineligible for FMLA. Whether a salaried executive with hours restrictions is eligible for a bona fide salaried executive position will be evaluated on a case by case basis considering the amount of hours restricted and the type of job.

Smaili Decl., Ex. D.

On July 30, 2010, Macy's Return to Work Coordinator sent Ms. Dezham a letter stating that Ms. Dezham's physician had informed Macy's that Ms. Dezham could return to work with certain restrictions. Smaili Decl., Ex. C, Dkt. 89-3. The letter identified a temporary assignment and requested that Ms. Dezham report to work on August 5, 2010. *Id.* The letter also stated that it was Macy's goal "to eventually return you to your full duty position." *Id.* Ms. Dezham testified that when she reported to work on August 5, 2010, Macy's human resources representative, Roberta Eagle, was surprised to see her, told her that a modified position was not ready, and sent her home. Dezham Dep. 131:11-132:10, May 16, 2014.

On August 23, 2010, Ms. Dezham's doctor filled out a Work Restriction Summary form, which provided the following work restrictions: "Use cast shoe for ambulation. Seated/desk work only. No climbing or uneven surfaces. Must be allowed to use cane, splint as directed." Smaili Decl, Ex. F (MACYS001574). The form also indicated that Ms. Dezham could return to modified duty with the indicated restrictions on August 23 through September 3, 2010.

In late August 2010, Macy's assigned Ms. Dezham to perform modified/light duty in the Administrative Support Team ("AST") department. Macy's UF 18, 21. This temporary position was created to meet Ms. Dezham's restrictions of sitting for most of the shift but would also allow her flexibility to stand and walk when able as well. Macy's UF 21. Ms. Dezham was not "coded" as an AST associate. Macy's UF 22. She was simply placed in the executive office to do clerical work until her health improved and she was able to return to her previous position or until Macy's could find another position that met her restrictions. Macy's UF 22. This assignment was to last no more than 90 days, pursuant to Macy's policy. Macy's UF 22. Ms. Dezham's role in the AST department was similar to that of a temporary employee and her duties included making photocopies, answering phones, and other administrative tasks. Macy's UF 24. Ms. Dezham testified that, while she was in the temporary AST assignment, she was asked on two occasions to help in the fitting room in the store. Dezham Dep. 148:9-17.

On October 20, 2010, Ms. Dezham's doctor filled out an updated Work Restriction Summary, which, among other things, placed a restriction on Ms. Dezham to "[s]tand and walk

30 minutes per hour, 4 hours total out of an 8 hour shift for the next 3 weeks. Then return to normal work." Eagle Dep., Ex. D, p. 2 (MACYS001572). On December 21, 2010, Ms. Dezham's doctor updated the restrictions as follows: "Stand no more than 10 cumulative minutes per hour, for no more than 1 hour(s) per day. Walk no more than 10 cumulative minutes per hour, for no more than 1 hour(s) per day." Smaili Decl., Ex. V. On January 12, 2011, Ms. Dezham's doctor again updated Ms. Dezham's restrictions as follows: "Lift/carry no more than 10 pounds. Push/pull no more than 10 pounds. Should not stand or walk more than 20 minutes per hour. May work 8 hrs. shift. No climbing or uneven surfaces." Eagle Decl., ¶ 13, Ex. D, Dkt. 76-1.

It is not clear exactly when but at some point between November 2010 and January 2011, Ms. Dezham was returned to her position on the sales floor in the intimate apparel department. During Ms. Dezham's temporary assignment in the AST department, Ms. Eagle and a member of Macy's return to work department reviewed Ms. Dezham's restrictions to determine what accommodations could be made that would allow Ms. Dezham to return to her sales position. Macy's UF 29. They decided that purchasing a motorized scooter would allow Ms. Dezham to perform her job duties on the sales floor while still meeting her restrictions. Macy's UF 29-30.

Ms. Dezham performed her job duties with the assistance of the scooter for approximately five months. Macy's UF 38. Ms. Dezham was able to honor the restrictions imposed by her doctor while working with the scooter. Macy's UF 37. However, Ms. Dezham contends that use of the scooter and difficulties she had in meeting her sales goals caused her to develop extreme back pain. On May 27, 2011, Ms. Dezham's physician placed her back on a leave of absence because of her pain. Macy's UF 38. On July 6, 2011, Ms. Dezham had exhausted her eligibility for leave under the Family Medical Leave Act but she remained on leave. On October 12, 2011, Ms. Dezham exhausted all eligible leave under Macy's leave policy. Subsequently, Macy's granted Ms. Dezham multiple extensions of her leave of absence, the last of which authorized an extension through January 2, 2012. On January 6, 2012, Ms.

Dezham's doctor provided a note stating that he was "unable to give a return date in the reasonably foreseeable future as the leave is indefinite."

After she was placed on a leave of absence in May 2011, Macy's granted several requests to extend the leave of absence until January 2012. Macy's UF 40.

On January 16, 2012, Macy's sent Ms. Dezham a letter stating that, because Ms. Dezham's doctor could not give a return date in the reasonably foreseeable future, it was denying her request for another extension of the leave of absence and it would take her "off roll, effective January 24, 2011 [sic]." Smaili Decl., Ex. M. The letter also stated that Ms. Dezham was free to reapply for a position with Macy's in the future. *Id.*

### B. Ms. Dezham's Reapplication

In March 2013, Ms. Dezham was released by her doctor to work. Macy's UF 47. In the spring of 2013, Ms. Dezham submitted online applications for positions at both the Laguna Hills and Costa Mesa Macy's locations. All application vetting is done by Macy's Employment Support Center, which is located in Clearwater, Florida. An employee in Florida reviews each application and considers the qualifications of the candidate, the pay rate requested versus the pay rate allowed for the position, the applicant's response to the various questions on the application, and other factors. The only information that the reviewer in Florida will know about the applicant is what appears on the application itself. Macy's UF 50.

After submitting her application to work at the Laguna Hills location, Ms. Dezham received an e-mail response stating, "Unfortunately, we are unable to consider your application further for this opportunity. We invite you to continue to visit www.macysJOBS.com to discover and apply for new employment opportunities as they become available." Dezham Decl., Ex. A.

After submitting her application to work at the Costa Mesa location, Ms. Dezham received an e-mail asking her to schedule an interview. Macy's UF 51-52. Ms. Dezham was interviewed on June 1, 2013. During the interview, Ms. Dezham state that she needed a seated position and wanted to be in the AST department. After the interview was over, the interviewer exchanged text messages with the manager of the AST department, Shawn Fahey, about Ms.

Dezham. In the exchange, Mr. Fahey (who had supervised Ms. Dezham while she was in her temporary position in AST) indicated that Ms. Dezham was good at sales but not a good fit for AST. He also stated that there were no openings in AST.

Ultimately, Ms. Dezham was not hired. Macy's contends that she was not hired because when the interviewer checked Macy's job board after the interview, the openings had all been filled. Macy's UF 53. Instead, the interviewer "benched" Ms. Dezham's application for future consideration. Macy's UF 53. Benched applications are put in a file in the store to be available to any managers seeking to fill an opening. Macy's UF 54.

### C. Corporate Structure of Macy's Defendants

Defendant Macy's Retail Holdings, Inc. ("MRH") is the parent company of Defendant Macy's West Stores, Inc. ("MWS" or "Macy's") and Macy's Corporate Services, Inc. ("MCS"). Dkt. 82, MRH's Statement of Uncontroverted Material Facts and Conclusions of Law ("MRH's UF") 1. MRH is a wholly-owned subsidiary of Macy's, Inc., which is not a party to this action. MRH's UF 2. MRH operates department stores across the United States but does not operate the stores in California under the Macy's trade name. MRH UF 4.

MWS is the employer of all individuals—including Ms. Dezham—who work in retail stores in California operating under the trade name "Macy's." MRH UF 5. MWS is responsible for directing the day-to-day activities of all store employees. MRH UF 6. MCS does not operate any retail department stores nor does it offer any merchandise for purchase on-line in any state. MRH UF 7. Neither MCS nor MRH employs any store personnel in California. MRH UF 8-9.

### D. Ms. Dezham's Claims and the Motions of Summary Judgment

On October 17, 2013, Ms. Dezham filed a lawsuit against MWS, MCS, and MRH in Orange County Superior Court. On November 27, 2013, the defendants removed the action to federal court. The operative complaint—Ms. Dezham's First Amended Complaint ("FAC")—asserts nineteen claims: (1) age discrimination; (2) race/national origin discrimination; (3) physical and mental disability/medical condition discrimination; (4) discrimination based on participation in protected conduct; (5) failure to prevent or remedy discrimination and harassment; (6) retaliation; (7) harassment; (8) intentional infliction of emotional distress; (9)

refusal to accommodate disability/medical condition; (10) violation of Article I, § 8 of the California Constitution; (11) refusal to hire/reinstate; (12) wrongful termination; (13) failure to pay vacation time/wages; (14) violation of California Labor Code §226(b); (15) violation of the Age Discrimination in Employment Act; (16) violation of the Americans with Disabilities Act; (17) violation of Title VII (42 U.S.C. § 2000); (18) violation of the Civil Rights Act of 1866 (42 U.S.C. § 1981); and (19) unfair competition. The Court previously dismissed Ms. Dezham's Eighth claim.

Macy's filed its Motion for Summary Judgment seeking adjudication of Ms. Dezham's remaining eighteen claims. Dkt. 69. MCS and MRH filed their Motion for Summary Judgment arguing that they cannot be liable for Ms. Dezham's claims because they were not her employer. Dkt. 81.

## II.    LEGAL STANDARD

Summary judgment or partial summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248–49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. Whether a fact is material is determined by the substantive law governing the claim or defense. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *Id.* The court need not "comb the record" looking for other evidence; it is required only to consider evidence set forth in the moving and opposing papers and in the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

## III.   ANALYSIS

### A.  Genuineness of Factual Disputes

As a preliminary matter, the Court addresses a point emphasized by Ms. Dezham. She argues that the Motions for Summary Judgment should be denied because she disputed nearly every fact offered by the defendants. However, many of Ms. Dezham's responses to the facts offered by the defendants are improper argument and conclusions, instead of evidentiary facts supported by citations to evidence. *See Angel v. Seattle-First Nat. Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981) ("A motion for summary judgment cannot be defeated by mere conclusory allegations unsupported by factual data.").  Additionally, the evidence cited in many of Ms. Dezham's responses does not actually respond to the fact offered by Macy's. In resolving the Motions for Summary Judgment, the Court considers whether a material fact is *genuinely* disputed. *See Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) ("[A] dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor.").

### B.  Macy's Motion for Summary Judgment

#### 1.  Statute of Limitations

Macy's argues that several of Ms. Dezham's claims are time-barred.

### a. State Claims Based on Adverse Employment Action

Under California's Fair Employment and Housing Act (the "FEHA"), there are effectively two limitations periods that must be satisfied. "Section 12960 provides that an employee bringing an FEHA claim must exhaust the administrative remedy by filing an administrative complaint with the [Department of Fair Employment and Housing ("DFEH")] within one year after the alleged unlawful action occurred." *Acuna v. San Diego Gas & Elec. Co.*, 217 Cal. App. 4th 1402, 1412 (2013). After the employee files an administrative complaint, if the DFEH does not issue an accusation within a specified period, it must issue a right-to-sue letter to the employee. *Id.* at 1413 (citing Cal. Gov't Code § 12965). The employee must bring a civil suit within one year of the right-to-sue notice. *Id.*

Ms. Dezham did not file her first administrative complaint until October 2 or October 17, 2012. Much of Macy's conduct alleged by Ms. Dezham occurred before October 2, 2011, and therefore cannot support an actionable claim unless the period is subject to equitable tolling. Ms. Dezham argues that under the continuing violation doctrine all of Macy's conduct alleged in the FAC is "included in [Ms. Dezham's] charge with DFEH." Dkt. 86, 11:2-3. "[T]he continuing violation doctrine comes into play when an employee raises a claim based on conduct that occurred in part outside the limitations period." *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 812 (2001). For example, "when an employer engages in a continuing course of unlawful conduct under the FEHA by refusing reasonable accommodation of a disabled employee or engaging in disability harassment . . . the statute of limitations begins to run . . . *either* when the course of conduct is brought to an end, as by the employer's cessation of such conduct or by the employee's resignation, *or* when the employee is on notice that further efforts to end the unlawful conduct will be in vain." *Richards*, 26 Cal. 4th at 823-24. However, when an employee claims unlawful discrimination in an employer's adverse employment action, the one-year statutory period for filing a DFEH claim accrues at the time of the discrete adverse employment action. *See Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 493 (1996) (one-year period accrues at the time employee is actually terminated).

Several of Ms. Dezham's claims are based on adverse employment action being unlawfully discriminatory. To the extent Ms. Dezham's First, Second, Third, Fourth, and Fifth claims are based on adverse employment action occurring on or before October 1, 2011, those claims are time-barred.

Macy's argues that Ms. Dezham's claims based on her termination on January 24, 2012, is also time-barred. It contends that the date of Ms. Dezham's right-to-sue notice from the DFEH is October 2, 2012, and she did not file her civil complaint until one year and fifteen days later, on October 17, 2013. The document Macy's relies on includes a one-page letter that is dated October 2, 2012, and bears a heading "Notice of Case Closure and Right to Sue." Flynn Decl., Ex. 1, Dkt. 77-1. The document states that a "civil action must be filed within one year from the date of this letter." *Id.* However, Ms. Dezham's administrative complaint appears to identify October 17, 2012, as the date Ms. Dezham verified the complaint. *Id.* If the DFEH issued the right-to-sue notice on October 2, 2012, Ms. Dezham's claims under the FEHA are time-barred. If the DFEH issued the right-to-sue notice on October 17, 2012, this lawsuit was brought within the one-year time period allowed under the FEHA.

In its reply brief, Macy's misconstrues Ms. Dezham's argument. Ms. Dezham does not contend the limitations period begins on October 17, 2012, because that is the date she *received* the right-to-sue notice. *See Hall v. Goodwill Indus. of S. Cal.*, 193 Cal. App. 4th 718, 730 (2011) (holding the FEHA's one-year limitations period begins to run on the date of the right-to-sue notice, not the date the notice was received by the plaintiff). Rather, she contends the date listed on the right-to-sue notice is an error and that the true date of the notice—that is, the date it was generated by the DFEH—is October 17. In a declaration, Ms. Dezham's counsel, Jihad M. Smaili, offers an explanation for the apparent discrepancy. Mr. Smaili states that he created an online account with the DFEH on October 2, 2012, but did not file the administrative complaint until October 17, 2012. His declaration includes what appears to be an e-mail from the DFEH dated October 17, 2012, which attaches the right-to-sue notice. A genuine dispute of fact remains as to when the DFEH issued Ms. Dezham her right-to-sue notice—on October 2 or

October 17, 2012. Thus, Macy's has not established that Ms. Dezham's claims based on her termination on January 24, 2012, are time-barred.

Macy's concedes that Ms. Dezham's claims under FEHA based on failure to rehire are timely.

### b. Federal Claims Based on Adverse Employment Action

Like claims under the FEHA, claims under the Age Discrimination in Employment Act (the "ADEA"), the Americans with Disabilities Act (the "ADA"), and Title VII of the Civil Rights Act of 1964 ("Title VII") are subject to both an administrative exhaustion requirement as well as a limitations period for filing suit. As indicated in the Court's earlier ruling (Dkt. 57), Ms. Dezham's first administrative complaint filed with the DFEH timely satisfied the exhaustion requirement (at least as to claims based on Ms. Dezham's termination) because of the worksharing agreement between the DFEH and the EEOC and because the complaint was filed within 300 days of Ms. Dezham's termination. *See* 29 U.S.C. § 626(d) (ADEA); 42 U.S.C. § 2000e-5(e)(1) (Title VII); 42 U.S.C. § 12117 (ADA). However, a civil suit asserting claims under the ADEA, ADA, and Title VII must be filed within 90 days of termination of administrative proceedings. *See* 29 U.S.C. § 626(e) (ADEA); 42 U.S.C. § 2000e-5(f)(1) (Title VII and ADA). Because Ms. Dezham did not file the civil complaint until one year after receiving the right-to-sue notice, her claims under the ADEA, the ADA, and Title VII asserted in the first administrative complaint are time-barred. Macy's is entitled to summary judgment on Ms. Dezham's Fifteenth, Sixteenth, and Seventeenth claims to the extent they are based on Ms. Dezham's termination or any other adverse employment action occurring before November 29, 2012 (300 days before September 25, 2013, the date Ms. Dezham filed her third administrative complaint).

The Court has not located a copy of Ms. Dezham's third administrative complaint within the voluminous factual record provided by the parties in connection with the Motions for Summary Judgment. Presumably, that administrative complaint asserts claims based on Macy's failure to rehire Ms. Dezham. Macy's has not established that Ms. Dezham's claims under the

ADEA, the ADA, and Title VII are time-barred insofar as they are based on Macy's failure to rehire Ms. Dezham.

Ms. Dezham's claims based on the Civil Rights Act of 1866 are not subject to administrative exhaustion requirements and have a four-year statute of limitations. *See* 28 U.S.C. § 1658(a); *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382-83 (2004); *Johnson v. Lucent Technologies Inc.*, 653 F.3d 1000, 1006 (9th Cir. 2011). Therefore, Ms. Dezham's Eighteenth claim is not time-barred.

### c. Retaliation

Unlike her other claims under the FEHA, Ms. Dezham's retaliation claim is potentially subject to the continuing violations doctrine. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1059 (2005). Ms. Dezham alleges a retaliatory course of conduct rather than a discrete act of retaliation. Moreover, as discussed above, even assuming the continuing violations doctrine did not apply to this claim, Macy's has not established that claims under the FEHA based on Ms. Dezham's termination are time-barred. Therefore, Macy's has not established that Ms. Dezham's Sixth claim is time-barred.

### d. Harassment

The FEHA prohibits harassment in the workplace on the basis of an employee being a member of a protected class. Cal. Gov't Code § 12940(j). As part of her Seventh claim, Ms. Dezham alleges that Macy's "created and allowed to exist a hostile environment and discriminated against and harassed [Ms. Dezham] on the basis of her race, religious creed, national origin, physical disability, mental disability, medical condition, and age." FAC, ¶ 156.

Harassment, as the term is used in California Government Code § 12940(j), "focuses on situations in which the *social environment* of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 706 (2009). Although Ms. Dezham's employment was not terminated until January 24, 2012, it is undisputed that she did not work in a Macy's store after May 27, 2011. The conduct upon which Ms. Dezham's harassment claim is based necessarily ended no later than May 27, 2011. Because Ms.

Dezham's first administrative complaint was not filed until October 2012, her Seventh claim is time-barred. Likewise, to the extent Ms. Dezham's claims under the ADEA, the ADA, and Title VII are for workplace harassment, they are also time-barred.

### e.  Reasonable Accommodation

Ms. Dezham's Ninth claim alleges Macy's failed to provide reasonable accommodation for her disability or medical condition. Under the continuing violations doctrine, Ms. Dezham's claim accrues when the course of conduct ends or when Ms. Dezham was put on notice that further efforts to end the unlawful conduct would be in vain. *See Richards*, 26 Cal. 4th at 823-24. Ms. Dezham's claim for failure to provide reasonable accommodation is not time-barred because the course of conduct alleged to support Ms. Dezham's claim did not end until her employment was terminated in January 2012 and Macy's did not otherwise put Ms. Dezham on notice that it would not consider any other requests for accommodation.

### f.  Waiting Time Penalties

Macy's argues that Ms. Dezham's Thirteenth claim seeking waiting time penalties is time-barred because the claim is subject to a one-year statute of limitations. The Court disagrees. The California Supreme Court has held that a claim for waiting time penalties has a three-year limitations period. *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1398 (2010). Notably, the single unpublished case cited by Macy's relied on a court of appeal decision that was expressly disapproved of by the court in *Pineda*. *See id.* at 1396 (disapproving of *McCoy v. Superior Court*, 157 Cal. App. 4th 225 (2007)). Ms. Dezham's Thirteenth claim is not time-barred.

### 2.  Discrimination under the FEHA, the ADEA, the ADA, Title VII, and the Civil Rights Act of 1866

Ms. Dezham's First, Second, and Third claims under the FEHA and her Fifteenth, Sixteenth, Seventeenth, and Eighteenth claims under federal statutes allege unlawful discrimination. Although these claims involve both state and federal laws, California courts rely upon interpretations of federal anti-discrimination laws to interpret the FEHA. *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996); *Clark v. Claremont Univ. Ctr. &*

*Graduate Sch.*, 6 Cal.App.4th 639, 662 (1992). Thus, this Court uses the same analysis for Ms. Dezham's state and federal law discrimination claims.

Ms. Dezham's discrimination claims are subject to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 354-55 (2000). "Under this analysis, plaintiffs must first establish a prima facie case of employment discrimination." *Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010). If Ms. Dezham establishes a prima facie case, the burden of production shifts to Macy's to articulate a "legitimate, nondiscriminatory reason for the challenged action." *Id.* (internal quotation marks omitted). If Macy's meets this burden, Ms. Dezham must then raise a genuine dispute of material fact as to whether Macy's proffered reasons for the adverse employment action are merely pretext for unlawful discrimination. *Id.*

Ms. Dezham "can prove pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1127 (9th Cir. 2000) (internal quotation marks omitted). To show pretext, Ms. Dezham must "put forth *specific* and *substantial* evidence that [Macy's] reasons are really a pretext." *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 661 (9th Cir. 2002). "[W]here the *prima facie* case consists of no more than the minimum necessary to create a presumption of discrimination under *McDonnell Douglas*, plaintiff has failed to raise a triable issue of fact." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994).

The specific elements of a prima facie case of a discrimination claim varies depending on the particular facts, but, generally, Ms. Dezham "must provide evidence that (1) [s]he was a member of a protected class, (2) [s]he was qualified for the position he sought or was performing competently in the position he held, (3) [s]he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." *Guz*, 24 Cal. 4th at 355. To establish a prima facie case for her disability discrimination claim, Ms. Dezham must provide evidence that: (1)

she suffers from a disability; (2) she can perform the essential functions of her job with or without reasonable accommodation; and (3) she was subjected to an adverse employment action because of the disability. *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 254 (2000).

For purposes of its Motion for Summary Judgment, Macy's assumes that Ms. Dezham can make a prima facie case for her discrimination claims. Instead, Macy's contends it had legitimate, nondiscriminatory reasons for its conduct.

### a.   Claims Based on Ms. Dezham's Termination in January 2012

Macy's proffered nondiscriminatory reason for terminating Ms. Dezham is as follows: (1) in May 2011, after having returned to her sales position with use of a scooter, Ms. Dezham requested another leave of absence; (2) Macy's granted the request; (3) Ms. Dezham exhausted all available Family and Medical Leave Act (FMLA) leave by July 6, 2011; (4) Macy's extended Ms. Dezham's leave until October 12, 2011; (5) although Ms. Dezham had exhausted all Macy's leave, Macy's extended her leave until November 14, 2011, and granted additional extensions through December 4, 2011, and January 2, 2012; (6) when Ms. Dezham's physician wrote on January 6, 2012, that he was unable to give a return date in the foreseeable future, Macy's determined the leave was indefinite and terminated Ms. Dezham's employment. Macy's argues that it is not required to give an indefinite leave of absence. Because Macy's stated reason for Ms. Dezham's termination is "facially unrelated to prohibited bias," Ms. Dezham bears the burden of proving "that the reason is pretext for unlawful discrimination." *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235 (9th Cir. 2013) (internal quotation marks omitted).

Ms. Dezham argues that "Macy's took advantage of an error committed by [Ms. Dezham's] doctor and exploited same to conceal its true motivation for terminating [Ms. Dezham]." Dkt. 86, 12:16-17. In the doctor's form on which Macy's based its termination decision, the doctor checked a box indicating "No" in response to a question of whether "the limitation affect[s] the employee's ability to perform any of his/her job functions as shown on the attached Job Description?" Ms. Dezham argues that because the doctor checked this box, he should not have answered the following questions on the form, including the question the

doctor responded to by indicating that Ms. Dezham could not return to work in the reasonably foreseeable future. Ms. Dezham also argues that the doctor's previous form indicated Ms. Dezham could return to work on January 2, 2012.

The Court finds Ms. Dezham's arguments insufficient to create a genuine factual dispute. The doctor wrote on the January 6, 2012 form: "Pt [patient] presently total temporary disabled. Pt under pain management." Dkt. 89-5. The doctor went on to check a box indicating "I am unable to give a return date in the reasonably foreseeable future, as the leave is indefinite." *Id.* The earlier doctor's note indicating a return date of January 2, 2012, does not modify the later note. A review of the earlier note reveals that it is simply one of a series of notes prepared after regular doctor's visits, likely in connection with Ms. Dezham's requests for extension of her leave of absence. It is undisputed that Ms. Dezham did not in fact return to work on January 2 and the January 6 note indicated that she could not return in the reasonably foreseeable future. Ms. Dezham has not met her burden of offering specific and substantial evidence that Macy's asserted non-discriminatory reason is a pretext. *Aragon*, 292 F.3d at 661; *see also Arteaga v. Brink's, Inc.*, 163 Cal. App. 4th 327, 343 (2008) ("[T]he [employee] must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence,' . . . and hence infer 'that the employer did not act for the [the asserted] non-discriminatory reasons.'") (first alteration added).[1]

Based on the foregoing, Macy's is entitled to judgment as a matter of law on Ms. Dezham's First, Second, Third, Fifteenth, Sixteenth, Seventeenth, and Eighteenth claims to the extent those claims are based on her termination in January 2012.

### b. Claims Based on Failure to Rehire in 2013

Several of Ms. Dezham's claims are based on Macy's failure to rehire her when she submitted employment applications in the spring of 2013. Macy's offers a declaration from Denice Flynn, Macy's Vice President – Associate Relations, stating:

---

[1] Notably, Ms. Dezham testified at her deposition that she did not think Macy's took her off roll because of her race, national origin, religion, or age. Dezham Dep. 182:8-183:4.

All positions in Macy's are filled starting with the candidate's posting of an application on Macysjobs.com. If the candidate is approved as meeting the qualifications for the position, he or she is then invited to schedule an interview. All application vetting is done by the Employment Support Center in Clearwater, Florida. . . . The person reviewing the applications will consider the qualifications required for the position, the qualifications of the candidate, the pay rate requested versus the pay rate allowed for the position in question, the applicant's response to the various questions on the application and a myriad of other factors.

Dkt. 77, ¶ 4.

In the spring of 2013, Ms. Dezham submitted employment applications to two Macy's locations. One of the locations to which Ms. Dezham applied is in Laguna Hills. An entry from Ms. Dezham's online profile for her application to the Laguna Hills location indicates Macy's determination that Ms. Dezham "[d]oes not meet the required criteria for the role." Dkt. 89-26, at 16 (MACY'S 000741). Macy's further contends that the employee who vetted her application had no knowledge about Ms. Dezham's race, nationality, age or that she had a disability. Dkt. 69-1, 13:15-16. Ms. Flynn states that "[t]he person located in Florida [who reviews each application] would not have any reason to know – in this case for example – that Ms. Dezham was a Muslim, over 40, Iranian or that she had a disability. The only thing the Florida reviewer will know is the information submitted by the candidate on the application itself." Dkt. 77, ¶ 4. Ms. Dezham responds by pointing out that she stated on her application that she was laid off "during medical leave."

Ms. Dezham also applied to work at Macy's Costa Mesa location. She was granted an interview for a sales position. Ms. Dezham offers a series of text messages that were exchanged between two Macy's employees during or shortly after Ms. Dezham's interview. Contrary to Ms. Dezham's argument, these text messages do not show Macy's decision not to hire her was based on her age, national origin, or disability. Rather, the text messages are entirely consistent with Macy's explanation for why Ms. Dezham was not hired in 2013 (i.e., no sales or AST position was open and the manager of the AST position thought Ms. Dezham was not a good fit, presumably based on her stint working in AST two-and-a-half years earlier).

Ms. Dezham also offers statistical evidence of the ages of employees Macy's hired in June through December 2013. Specifically, she provides the percentage of the total employees Macy's hired for any position in a given period who were under the age of 40. While such

evidence arguably supports a prima facie showing of age discrimination,[2] it falls far short of meeting her burden upon Macy's evidence of a legitimate, non-discriminatory reason for not hiring her. Without more information—such as the percentage of total applicants who are under the age of 40—Ms. Dezham's statistical evidence shows little.

In short, Ms. Dezham has not offered specific and substantial evidence showing that Macy's reasons for not hiring her in 2013 are really a pretext. *See Aragon*, 292 F.3d at 661; *Arteaga*, 163 Cal. App. 4th at 343.

Based on the foregoing, Macy's is entitled to judgment as a matter of law on Ms. Dezham's First, Second, Third, Eleventh, Fifteenth, Sixteenth, Seventeenth, and Eighteenth claims to the extent those claims are based on Macy's failure to hire her in 2013.

### 3. Retaliation and Discrimination Based on Protected Conduct

Ms. Dezham's Fourth claim for discrimination based on protected conduct and Sixth claim for retaliation are also subject to the same burden-shifting framework as her discrimination claims. "Employees may establish a prima facie case of unlawful retaliation by showing that (1) they engaged in activities protected by the FEHA, (2) their employers subsequently took adverse employment action against them, and (3) there was a causal connection between the protected activity and the adverse employment action." *Miller v. Dep't of Corr.*, 36 Cal. 4th 446, 472 (2005). Ms. Dezham bases her retaliation claims on the following protected conduct: (1) complaining to Macy's and the DFEH about her mistreatment, harassment, and discrimination; and (2) filing a workers' compensation claim as a result of her injury. FAC ¶¶ 121, 144-146.

Ms. Dezham's argument attempting to show a causal connection between a protected activity and adverse employment action is conclusory and vague. *See* Dkt. 86 at 17:27-18:16. None of the evidence she offers shows a causal connection between her filing of a workers'

---

[2] "[W]hen a plaintiff seeks to establish a prima facie case of disparate treatment based solely on statistics, these statistics must show a stark pattern of discrimination unexplainable on grounds other than age." *Schechner v. KPIX-TV*, 686 F.3d 1018, 1024 (9th Cir. 2012) (internal quotation marks omitted). Because Macy's concedes for purposes of its Motion for Summary Judgment that Dezham can make a prima facie showing of discrimination, the Court need not determine whether Dezham has, in fact, established a prima facie showing of her various theories of discrimination.

compensation claim (or receiving workers' compensation benefits), her filing of a complaint with the DFEH, or her general complaints to Macy's and any adverse employment action.

Additionally, in attempting to rebut Macy's asserted non-retaliatory reason for terminating her employment, Ms. Dezham relies (by reference) on the same arguments she made attempting to rebut Macy's asserted non-discriminatory reason for terminating her. As discussed in Part II.B.2.a. above, Ms. Dezham has failed to offer specific and substantial evidence showing that Macy's reasons for terminating her employment in January 2012 and for not hiring her in 2013 are pretextual.

Macy's is entitled to summary judgment on Ms. Dezham's Fourth and Sixth claims.

### 4. Failure to Prevent Discrimination

California Government Code § 12940(k) provides that it is an unlawful employment practice "[f]or an employer . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." "This provision creates a statutory tort action with the usual tort elements [duty of care to plaintiff, breach of duty, causation and damages]." *Veronese v. Lucasfilm Ltd.*, 212 Cal. App. 4th 1, 28 (2012) (internal quotation marks omitted; alteration in original). The elements of a claim for failure to prevent discrimination or harassment are: "1) plaintiff was subjected to discrimination, harassment or retaliation; 2) defendant failed to take all reasonable steps to prevent discrimination, harassment or retaliation; and 3) this failure caused plaintiff to suffer injury, damage, loss or harm." *Leland v. City & Cnty. of San Francisco*, 576 F. Supp. 2d 1079, 1103 (N.D. Cal. 2008) (citing California Civil Jury Instructions (BAJI) 12.11); *see also* Judicial Council of California Civil Jury Instruction (CACI) 2527. Because Ms. Dezham's discrimination, retaliation, and harassment claims fail, Macy's is also entitled to summary judgment on Ms. Dezham's Fifth claim for failure to prevent discrimination. *See Lee v. Eden Med. Ctr.*, 690 F. Supp. 2d 1011, 1025 (N.D. Cal. 2010) ("[B]ecause Plaintiff has not supported her FEHA claims of discrimination or harassment, her claim of Defendant's failure to prevent discrimination and harassment fails as well.").

### 5.   Reasonable Accommodation

"The elements of a failure to accommodate claim are (1) the plaintiff has a disability under the FEHA, (2) the plaintiff is qualified to perform the essential functions of the position, and (3) the employer failed to reasonably accommodate the plaintiff's disability." *Scotch v. Art Inst. of California-Orange Cnty., Inc.*, 173 Cal. App. 4th 986, 1009-10 (2009) (internal quotation marks omitted). "Pursuant to the FEHA, it is unlawful '[f]or an employer . . . to fail to make reasonable accommodation for the known physical . . . disability of an . . . employee.' An employer, however, is not required to provide 'an accommodation that is demonstrated by the employer . . . to produce undue hardship to its operation.'" *Dep't of Fair Employment & Hous. v. Lucent Technologies, Inc.*, 642 F.3d 728, 743 (9th Cir. 2011) (quoting the FEHA) (alterations in original). "[T]he interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees with the goal of identify[ing] an accommodation that allows the employee to perform the job effectively." *Id.* at 742-43 (internal quotation marks omitted; alterations in original).

"[T]he employer cannot prevail on summary judgment on a claim of failure to reasonably accommodate unless it establishes through undisputed facts that (1) reasonable accommodation was offered and refused; (2) there simply was no vacant position within the employer's organization for which the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation; or (3) the employer did everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the employee failed to engage in discussions in good faith." *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 263 (2000).

From the time Ms. Dezham injured her foot in July 2010 until she was terminated in January 2012, Macy's accommodated Ms. Dezham in reliance on medical information provided by Ms. Dezham's doctors: right after her injury, Ms. Dezham was granted a leave of absence; after she was cleared to return to work but with substantial restrictions, Macy's provided Ms. Dezham with a temporary assignment in the AST department; after her restrictions decreased,

Macy's purchased a scooter to allow Ms. Dezham to return to her sales position;[3] and after her doctor placed her on a leave of absence in May 2011 and she had exhausted the 26-weeks' leave allowed under Macy's policy, Macy's granted multiple extensions of Ms. Dezham's leave. Only after Ms. Dezham had been on leave for approximately eight consecutive months and her doctor could not provide an anticipated return date in the reasonably foreseeable future did Macy's decide to take her off roll.

Although a *finite* leave of absence has been held to be a reasonable accommodation, *see, e.g.*, *Humphrey v. Mem'l Hospitals Ass'n*, 239 F.3d 1128, 1135-36 (9th Cir. 2001); *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 226 (1999), "[t]here are limits to how far an employer must go in granting medical leave," *Waggoner v. Olin Corp.*, 169 F.3d 481, 483 (7th Cir. 1999). The Court agrees with cases which have held that "an employer need not provide an *indefinite* leave of absence." *Wynes v. Kaiser Permanente Hospitals*, 936 F. Supp. 2d 1171, 1184 (E.D. Cal. 2013) (emphasis added); *see also Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998) ("Reasonable accommodation does not require the employer to wait indefinitely for an employee's medical condition to be corrected."); *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995) ("Nothing in the text of the reasonable accommodation provision requires an employer to wait an indefinite period for an accommodation to achieve its intended effect.").

Because Ms. Dezham "was not released by her doctor to return to work, she has not met the second requirement that she be qualified to perform the essential functions of the job." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998). "An employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA." *Tyndall v. National Educ. Ctrs. Inc.*, 31 F.3d 209, 213 (4th Cir.1994). The Court finds that, based on the undisputed facts, Macy's accommodation of Ms. Dezham was reasonable as a matter of law. *See Wynes*, 936 F. Supp. 2d at 1184 ("In light of Plaintiff's extended leave of absence (with several extensions provided by Kaiser) and her

---

[3] Ms. Dezham does not dispute that by using the scooter on the sales floor she was able to honor the restrictions imposed by her doctor. Macy's UF 37. Her argument that her injury and/or use of the scooter impacted her ability to reach sales goals does not raise a genuine dispute of whether the scooter allowed her to perform the essential functions of her sales job within the restrictions provided by her doctor.

doctor's inability to provide a date of Plaintiff's anticipated return to work, it was reasonable for Kaiser to refuse to extend Plaintiff's medical leave of absence any further.").

### 6.  Wrongful Termination in Violation of Public Policy (*Tameny*) and California Constitution Article I § 8

Ms. Dezham's Tenth claim is for violation of Article I, Section 8 of the California Constitution, which provides: "A person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin." Ms. Dezham's Twelfth claim is for wrongful termination in violation of public policy—commonly referred to as a *Tameny* claim. *See Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167 (1980). The elements of a *Tameny* claim are "(1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the discharge caused the plaintiff harm." *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 154 (2014). The public policy alleged to be violated must be "(1) fundamental, (2) beneficial for the  public, and (3) embodied in a statute or constitutional provision." *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1256 (1994) (footnotes omitted). The causation element requires a showing of a nexus between protected conduct by the employee and the termination. *See id.* at 1258. Ms. Dezham bases her *Tameny* claim on the FEHA and California Labor Code § 6310, which provides that employees cannot be terminated for making an oral or written complaint related to workplace safety or health.

Like her other claims that are based on her termination, Ms. Dezham's Tenth and Twelfth claims are subject to the burden-shifting framework of *McDonnell Douglas*. *See Loggins v. Kaiser Permanente Int'l*, 151 Cal. App. 4th 1102, 1108-09 (2007). These claims fail for the same reason as Ms. Dezham's other discrimination claims based on her termination: she failed to "put forth *specific* and *substantial* evidence that [Macy's] reasons are really a pretext." *Aragon*, 292 F.3d at 661.

### 7. Waiting Time Penalties

By her Thirteenth claim, Ms. Dezham seeks a waiting time penalty for Macy's allegedly failing to make timely payment of Ms. Dezham's final wages. *See* Cal. Labor Code §§ 201-203. California Labor Code § 208 states: "Every employee who is discharged shall be paid at the place of discharge, and every employee who quits shall be paid at the office or agency of the employer in the county where the employee has been performing labor." Macy's argues that Ms. Dezham's claim for waiting time penalties fails because she had an affirmative duty to *return to her place of work* to accept tender of her final pay and did not do so. However, the cases Macy's relies on which found such an affirmative duty were in the context of employees who had quit. Ms. Dezham, in contrast, was discharged. By the terms of the statute, she is to be paid "at the place of discharge." As Macy's points out in its moving papers, Ms. Dezham had not actually worked at a Macy's store for several months before she was terminated. Her discharge was accomplished by a letter sent by mail. It is unclear whether determining if the "place of discharge" in this context is a fact question for the jury. At a minimum, Ms. Dezham's interpretation—that Macy's was required to tender final pay by mail—is reasonable. Macy's thus is not entitled to summary judgment on Ms. Dezham's Thirteenth claim.

### 8. California Labor Code § 226(b)

Ms. Dezham's Fourteenth claim is for violation of Labor Code § 226(b), which imposes a duty on employers to provide a copy of employment records upon reasonable request by an employee. In its Motion for Summary Judgment, Macy's makes no argument related to this claim. Therefore, it has not established that it is entitled to summary judgment on Ms. Dezham's Fourteenth claim.

### 9. Unfair Competition

Ms. Dezham's Nineteenth claim is for violation of California Business and Professions Code § 17200 et seq. (the "UCL"). In effect, the UCL borrows violations of other laws—such as the states antidiscrimination laws—and makes those unlawful practices actionable under the UCL. *Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1505 (1999). Ms. Dezham's UCL claim is based, in part, on her claim for waiting time penalties. Because the claim for waiting time

penalties survives summary judgment, Macy's is not entitled to summary judgment on Ms. Dezham's Nineteenth claim.

### C.  MCS's and MRH's Motion for Summary Judgment

In their Motion for Summary Judgment, MCS and MRH correctly point out that generally only an employer can be found liable on claims asserted by Ms. Dezham. *See, e.g.*, *Reno v. Baird*, 18 Cal. 4th 640, 647 (1998) (*Tameny* claim and discrimination claim under the FEHA). The Court interprets Ms. Dezham's opposition as asserting essentially three related theories for finding MCS and MRH liable.

First, Ms. Dezham argues that MCS and MRH may be found liable under an agency theory. "[T]o establish a parent corporation's liability for acts or omissions of its subsidiary on an agency theory, a plaintiff must show more than mere representation of the parent by the subsidiary in dealings with third persons. The showing required is that 'a parent corporation *so controls the subsidiary* as to cause the subsidiary to become *merely* the agent or instrumentality of the parent[.]'" *Laird v. Capital Cities/ABC, Inc.*, 68 Cal. App. 4th 727, 741 (1998) (quoting *Linskey v. Heidelberg Eastern, Inc.*, 470 F.Supp. 1181, 1184 (E.D.N.Y.1979)) (second alteration in original). Ms. Dezham has failed to show that MRH, the parent of MWS, exercised any control over MWS's employment decisions. Additionally, Ms. Dezham's contention that MCS acted as the agent of MWS does not justify holding MCS liable. Rather, such an agency theory only supports the attachment of liability to the principal, not the agent. *See Reno*, 18 Cal. 4th at 647 (holding that a finding that individuals acting as agents of employer only serves to ensure that employers, not their agents, will be held liable if the agents take actions found to be discriminatory).

Second, Ms. Dezham argues that MCS and MRH may be liable as aiders and abettors of MWS's wrongful conduct. While it is doubtful this theory is legally viable in this context, *see Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1326 (1996) (supervisory employee is not personally liable under FEHA, as an aider and abettor, for failing to prevent discrimination), Ms. Dezham has failed to sufficiently support this claim with evidence.  Moreover, to the extent MCS or MRH acted as the agent of MWS, "under the agent's immunity rule, an agent is not liable for

conspiring with the principal when the agent is acting in an official capacity on behalf of the principal." *Id.* (citing *Applied Equipment Corp. v. Litton Saudi Arabia Ltd., supra,* 7 Cal. 4th 503, 512 n.4 (1993)).

Third, Ms. Dezham argues that MWS, MCS, and MRH are essentially a single entity. "An employee who seeks to hold a parent corporation liable for the acts or omissions of its subsidiary on the theory that the two corporate entities constitute a single employer has a heavy burden to meet under both California and federal law. Corporate entities are presumed to have separate existences, and the corporate form will be disregarded only when the ends of justice require this result." *Laird*, 68 Cal. App. 4th at 737 (citations omitted). To survive summary judgment, a plaintiff must show "that the parent has exercised control 'to a degree that exceeds the control normally exercised by a parent corporation.'" *Id.* at 738.

Almost all the evidence Ms. Dezham offers in support of her position shows the involvement of Macy's, Inc. in her employment and in the affairs of MWS generally.[4] However, given that Macy's, Inc. is not a party to this action, its involvement has little, if any, relevance to the question of whether MCS and MRH may be held liable for the claims asserted by Ms. Dezham. The factual assertions and evidence offered by Ms. Dezham do not overcome the "strong presumption that a parent company is not the employer of its subsidiary's employees." *Laird*, 68 Cal. App. 4th at 737.

In her opposition, Ms. Dezham also raises a discovery dispute which she contends justifies a continuance. "A party requesting a continuance pursuant to Rule [56(d)] must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006). "The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment." *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 921 (9th Cir. 1996) (citation omitted). "Moreover, '[t]he district court does not abuse its discretion by denying further discovery if the movant has failed diligently to pursue discovery in the past.'" *Conkle v.*

---

[4] Contrary to Ms. Dezham's assertion that MCS sent the January 16, 2012 letter terminating her employment, the letter bears the letterhead of Macy's, Inc.

*Jeong*, 73 F.3d 909, 914 (9th Cir. 1995) (quoting *California Union Ins. Co. v. Am. Diversified Sav. Bank*, 914 F.2d 1271, 1278 (9th Cir. 1990)).

Ms. Dezham has not met her burden under Rule 56(d) to justify a continuance. From the evidence submitted, it appears the parties met and conferred about Ms. Dezham's discovery issues in September and early November 2014. According to Macy's, at that time, its counsel produced additional documents and represented that all requested documents had been produced and that certain documents that were not produced did not exists. Ms. Dezham has failed to proffer sufficient facts to show that evidence exists that would prevent summary judgment. Additionally, she failed to show that she diligently pursued the discovery she seeks.

MCS and MRH are entitled to summary judgment.

## IV.    DISPOSITION

Based on the foregoing, the Court ORDERS as follows:

(1) The Motion for Summary Judgment filed by Macy's West Stores, Inc. is GRANTED as to Ms. Dezham's First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth, Fifteenth, Sixteenth, Seventeenth, and Eighteenth claims;

(2) Macy's West Stores, Inc.'s Motion for Summary Judgment is DENIED as to Ms. Dezham's Thirteenth, Fourteenth, and Nineteenth claims; and

(3) The Motion for Summary Judgment filed by Macy's Retail Holdings, Inc. and Macy's Corporate Services, Inc. is GRANTED.


DATED:  January 2, 2015


*David O. Carter*
_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE